Woods *v.* Ridley.

## – Joseph Woods, Surety, &c., *v.* Samuel B. Ridley, Administrator, &c.

The statute law of Tennessee, on the subject of nuncupative wills, embraces substantially the provisions of the statute of 29 Charles 2, in reference to that subject, and declares that no nuncupative will shall be good where the estate exceeds ten hundred and fifty dollars, unless proved by two witnesses present at the making thereof, and unless they, or some of them, were specially required to bear witness thereto by the testator himself, and unless it was made in his last sickness in his own habitation or dwelling-house, or where he had previously resided, ten days at least, except he be surprised with sickness on a journey, or from home, and dies without returning to his dwelling.

Nuncupative wills have never been regarded with favor by the court; but if duly proved, they are equally entitled to be established with written wills. Much greater strictness is required in several respects, in the proof of wills of this character, than in the proof of written wills, and if the proof fail in establishing a strict compliance with any one of the provisions of the statute, according to the current decisions in England and this country, it will be fatal to the establishment of the will.

No words used by the deceased which were not of a testamentary character can be regarded as a part of the will, although spoken at the time when the will was made. *Held,* that the following words used by the deceased, " I

want you to promise to settle my business;" "The whole;" "I wish James Morton to be made safe;" "You must hunt it out yourself,—you must ask Morton, he knows more about it than anybody else," cannot be regarded as an act of a testamentary nature, even if they had been delivered with the *animo testandi;* and at most, they could only amount to an appointment of his executor by the deceased, but as he did not, when he made these declarations, think he was making his will, they cannot have such an operation.

As a general rule, an administrator can make no contract, or create any new debt, by which the estate of his decedent would be chargeable at law.

An executor or administrator is individually responsible, although he expressly promises to pay "as executor," where the nature of the engagement necessarily creates an individual liability. *Sims* v. *Stilwell,* 3 How. 181, cited and confirmed.

Where an executor or administrator pays a debt, or discharges a contract which constituted a just charge against the estate of his testator or intestate, out of his private funds, he will be entitled to an allowance for the same in his administration account, and in case the estate has passed away, he can enforce the same against the heirs and distributees.

It has never been held by this court that an action could be maintained against an administrator in his representative character upon a promise to pay money borrowed by such administrator, on the ground that it was so obtained for the benefit of the estate; and an administrator, as a general rule, has no right to stipulate for the payment of interest.

He takes the place of his intestate as to all existing contracts; and it is his duty to discharge them in the mode pointed out by the law; he can waive no defence to which he is entitled by the law, and he is incapable of enlarging any contract entered into by the intestate.

The execution of the notes in controversy by M. R. and sureties only imposed a personal obligation on themselves, and cannot affect the estate.

Where an executor or administrator has given his own note in payment of a debt of the testator or intestate, the estate would not thereby be released, unless such was the agreement of the parties, even if the executor has settled and given himself credit in his account for the debt:—*Held,* that in such a case, the creditor may, at his election, hold the executor personally liable, or proceed by bill against the estate.

He who deals with the representative of a deceased person, is presumed in law to be fully apprised of the extent of such representative's authority to act in behalf of such estate.

A person who contracts to loan money, or advances money to the representative of a deceased person, even if it be upon the pretence that it is made to pay the debts of the estate, acquired no right either in law or equity against the estate, unless the money advanced has, in fact, been applied to the payment of debts for which the estate was justly and legally bound. *Held,* that in such case, the creditor of the administrator will be permitted to take the place, and will be subrogated to his rights; but it should be strictly proven

Woods *v.* Ridley.

that the money advanced had been applied beneficially and in payment of the debts of the estate.

Where testimony is not objected to in the court below, on account of incompetency, it is too late to object to it for the first time in this court.

The court of chancery has no authority to order an account to be stated between an executor and the estate of the testator.

ON appeal from the superior court of chancery.; Hon. Charles Scott, chancellor.

Joseph Wood filed his bill in the superior chancery court, against S. J. Ridley, as administrator, &c. The bill charges that Henry Ridley was indebted to Yeatman, Woods & Co., in a large sum of money, for which he had executed his notes. In the year 183–, Henry Ridley died, leaving a large estate, which is in this State.

That Moses Ridley administered on the estate of Henry Ridley, and the claims of complainants were not only proven according to law, but were known to the administrator to be just.

That the administrator, believing the estate would be ruined if those claims were pressed against it, proposed to renew the debt, and give security, provided time was given, which was assented to by complainants.

To carry out this arrangement, Moses Ridley, as administrator, and the wife, and the children of Henry Ridley, all being of age, executed five notes for the sum of $8,560 each, dated New Orleans, 1st April, 1845, and payable at one, two, three, four, and five years after date, bearing interest at the rate of 8 per cent. per annum from date, and expressing on their face to have been made for and on account of the estate of Henry Ridley, deceased.

By this arrangement, it was not intended to release the estate of Henry Ridley, because the indebtedness of that estate constituted the sole consideration of the notes, and the other parties to the note, besides the administrator, were considered in the light of securities only.

These notes remain unpaid, and are filed as exhibits A, B, C, and D.

At the January term of the probate court of Madison county, 1849, Samuel J. Ridley was appointed administrator in the

place of Moses Ridley, and took possession of the property, but has entirely failed to pay any of the notes; suits have been commenced at law against the obligors in the notes, but they are believed to be wholly unable to pay them, and it is but equitable and just that they should be paid out of the estate of Henry Ridley, but, in consequence of the execution of the notes, there is no legal remedy to enforce payment, and not being able to obtain a judgment at law, the administrator refuses to pay them.

Upon the execution of these notes, the complainants gave up to Moses Ridley, the administrator, the notes that had been probated and were binding upon the estate.

The bill prays for a statement of the amount due on the notes, of principal and interest, and that payment be decreed out of the estate of Henry Ridley, in the hands of Samuel J. Ridley, the administrator.

A general demurrer was filed to this bill, which was overruled, and defendants ordered to answer. Samuel J. Ridley, the administrator, answered, and as to all the other defendants, who are non-residents, publication was made and the bill taken as confessed as against them.

Answer of Samuel J. Ridley, administrator: Denies that Henry Ridley, in his lifetime, was indebted to Yeatman, Woods & Co., or ever executed any notes to them.

Admits that Henry Ridley died in the State of Tennessee, in 1835, leaving a large estate in Madison county, Miss., which estate, with its increase, is still in that county.

Denies that Moses Ridley ever legally administered on the estate in Madison county, but he assumed to act as administrator, without legal authority; but, as he did not execute a bond according to law, his acts were void.

Denies that Yeatman, Woods & Co. had any just and legal claims against the estate of Henry Ridley, or that any such were ever proven in the State of Mississippi. Any admissions by Moses Ridley, of the justice of such claim, would not be binding upon the estate, as he was not administrator, and no such admissions were ever made by respondent.

Admits the execution of the notes, as stated in the bill, but

denies that Moses Ridley had any right to sign his name as administrator, so as to charge the estate in the State of Mississippi, and insists that, as to the estate in Mississippi, the notes are void, because Moses Ridley was not the administrator.

Denies that the obligors of the notes know any thing about the consideration for which they were given. Moses Ridley said that it would be for the benefit of the estate to give these notes, and having confidence in him they executed them under his influence. He, Moses, fraudulently procured them to sign the notes, and they were not securities as stated.

Insists that the notes are void, because the obligors, who are the legal heirs of Henry Ridley, have received no distributive share of his estate, and the estate is still unsettled, and, therefore, they have received no consideration for said notes, and are under no obligation, at law or equity, to pay them.

Denies that the obligors in said notes were indebted to Moses Ridley, in any sum of money whatever.

Denies any knowledge of the understanding between complainant and Moses Ridley, at the time the notes were executed, that the estate of Henry Ridley was to remain bound for the debts; but whatever may have been such understanding, it could not bind the estate in Mississippi, because Moses Ridley had no power to bind the estate here. Don't know how much has been paid on the notes.

Admits his appointment as administrator as stated, but says that he was not appointed in the place of Moses Ridley, because he says that Moses Ridley was never the administrator in Mississippi. Admits his refusal to pay the notes presented to him. Admits that the obligors are unable to pay the notes, apart from their interest, in Henry Ridley's estate. Admits that complainant has no legal remedy to enforce payment of the notes, nor has he an equitable remedy, arising from the fact of Moses Ridley's inability to bind the estate, but if there is any remedy at all it is at law.

There was a suit in the circuit court of Madison county, and also a suit in the federal court, upon the notes.

The chancellor dismissed the bill, and Woods appealed to this court.

*George S. Yerger* for appellant.

1. At common law a nuncupative will, that is, a verbal will, was good, as to chattels. The power in this will was good at common law. 4 Kent's Com. 148, was here cited by him.

The statute of this State and part of Tennessee limits nuncupative wills to specified bequests, not amounting to more than a specified sum.

The will was made in Tennessee, where the testator resided. The law of Tennessee is not before the court, and the court can only *ex officio* notice that the common law is in force in that State. By that law the will is good.

But admitting such a statute as ours, the will in this case bequeathes nothing. It merely gives authority, which the statute does not touch. By virtue of this power he could sell, hire, or work slaves. It gave him no power over land, and he will have to account to heirs for rent, but this he will be allowed to charge in his account.

In the southern States, administrator is protected in such case, even without a will. 4 Strob. Eq. 1; 1 Rich. Eq. 1.

2. An executor or administrator is regarded in a court of equity as a trustee for creditors and distributees, that is, the personalty in his hands, or the fund, is the debtor, and is a trust subject to legal modifications. Although a trust, yet coupled at common law with a power on his part to pay or give a legal priority to debts of the same class, and also coupled with a power of sale, vesting a valid legal title. Our statutes modify the common law. Where estate is insufficient, it must be divided *pari passu*. Story, Eq. § 579 *et seq.*; 1 Gill & Johns. 270; 2 Wms. Ex's, 1437.

At common law the land was not chargeable with any except bond debts, binding the heir. Under our statute, where the personalty is insufficient, the land is charged also. It is, therefore, *sub modo*, a trust in the hands of the peer, and subject to be sold by the executor or administrator, upon an order made by the probate court.

3. By our laws, therefore, upon a man's death his real and personal estate stand charged with the payment of his debts. In equity, the personalty in the hands of the executor, and the

realty in the hands of the heir, are trusts, subject to legal modifications, varying them in their application, and subject to the powers conferred upon the executors. See Hutch. Code, 666, § 98, 99, &c.

The law requires an executor or an administrator to pay off the debts by sale of the personalty and realty, if both are necessary for that purpose.

If, mistaking his duty, or in conformity to the will, or supposed will of the testator, the administrator, with a view to benefit the estate and to save it, endeavors to work it out for the benefit of the children, how or to what extent he is liable to the heirs, and how it affects creditors, I propose now to examine.

That Moses Ridley acted in good faith, that he was acting for the benefit of the widow and orphan children of his brother, that he was acting in conformity with his dying request, empowering him, as far as the words of a dying brother could empower him, to act for the benefit of his children, no one can doubt.

1. The proof shows that Henry Ridley died largely indebted; it shows that Moses Ridley, the administrator, as administrator, and with the view of binding the estate, got N. & Y. Dick & Co. to advance money to him as administrator, to pay off these debts; the proof shows that the money thus procured as administrator, was appropriated to the payment of the debts of Henry Ridley. These debts were reduced by cotton and otherwise. See as to the evidence on these points.

The administrator, S. J. Ridley, is a party defendant. He has all the personal estate in his possession, and also the proceeds of the crop since 1848.

Is not the personal property in his possession as administrator bound in equity to pay these notes, they being for money advanced to the former administrator to pay off, and actually did pay off, Henry Ridley's debts.

To state such a question is to answer it. The original securities, i. e. notes of Henry Ridley, may be extinguished so far as the legal remedy is concerned, but the original indebtedness, except what has been paid, is still the same. The debt

11 *

Woods *v.* Ridley.

itself, though not the original securities, still remains. The debts due by Henry Ridley to third persons, were taken up by money advanced for that purpose to his administrator, upon agreement made with him as such. It is the same original indebtedness in the eye of a court of equity, or a mere equitable continuance of the debt in other hands, who are substituted to the original creditors' rights.

These two facts are proved; and as administrator, and with a view of binding the estate, Moses Ridley got Dick & Hill to advance the money, and, as administrator, with this money he paid off Henry Ridley's outstanding debts.

Whether Moses Ridley had or had not power to continue the estate by working negroes and land, has nothing to do with this question. That is a matter for settlement between him and the heirs. They can affirm his acts, in which case the profit and loss is theirs. They can disaffirm them, and then he is accountable for hire of slaves, rent of land, &c., if he acted without authority.

An executor or administrator, as such, may bind the estate in many instances by his contracts, some of which may be enforced at law, others only in a court of equity.

In this case, Ridley cannot be sued as administrator, for he is no longer such; and because the original securities are extinguished at law, leaving the debt evidenced by the contract of the former administrator only in force.

In equity, a contract made by an administrator even without authority to bind the estate at law, yet if made for the benefit of the estate and the proceeds appropriated to the benefit of the estate, is binding in equity, and the party paying or advancing the money, can enforce it in equity, as subrogated to the rights of the original creditor, even in cases where the contract is void at law. He is substituted to original creditors' right. *Peter* v. *Beverly*, 10 Peters; 9 S. & M. 193; 2 McCord, Ch. Rep. 114. Where the executor or administrator makes an executed contract, as selling lands without proper authority, for the purpose of paying debts, and the debts are paid and the estate discharged, although it may turn out contract or sale void, yet in equity, the person advancing money to executor and its being

Woods *v.* Ridley.

applied to payment of debts of estate, can enforce its payment in equity against the estate, and stand in place of the original creditors in equity. *Scott* v. *Dunn*, Mass. Rep.; *Donnelson* v. *Renge*, 1 Dev. & Battle, Eq. 425; *Williams* v. *Williams*, 1 Dev. Eq. Rep. 69; 2 McCord's Ch. Rep. 114.

By law all the estate of a deceased debtor is chargeable with its debts. The administrator is a trustee in equity. 2 Wms. Ex's, 1437; 1 Gill & Johns. 270. The estate must be appropriated to its debts. Where an executor, to save a sale of property, advances money out of his own pocket to pay it, he is entitled in equity to sell the property. This no man doubts. And it would be passing strange, if he could not bind the estate in equity to pay advances for the same purpose.

Such a power, in this country, is absolutely necessary. A discretion must exist. Estates otherwise will be often sacrificed. Take away this right and orphans and estates will be sacrificed; men will not risk ruin themselves to benefit children.

In the Southern States, usage itself has made the law. In this State the attempt to work out estates is common. It has been found to be beneficial, and in South Carolina, without any statute, the courts have decided, that an executor, acting in good faith and working out, is to be protected, and the estate bound by his acts. 4 Strob. Eq. Rep.; 1 Richardson, Eq. Rep. 1.

But unquestionably, the executor being entitled to all disbursements, when he contracts for advances or money to pay a debt which binds the estate, and does so in his representative character, the creditor is entitled to proceed in equity. See cases first cited, and 2 McCord, Ch. Rep. 114, and cases cited. This view of the case is conclusive, as we think. It is just, it is equitable, it is honest. But there are also other grounds on which it can be supported.

2. An executor or administrator cannot, without authority from will, carry on testator or intestate's business; if he does, he is subjected to all losses, but cannot take the profits. But if it is for the benefit of the estate, a court of equity has power to direct it to be carried on. Our courts of chancery possess all equitable jurisdiction. Undoubtedly a court of chancery in this

State may authorize executor or administrator to carry on planting, or the business of the testator. If it could authorize it, and if it is carried on without its authority, and it is perceived to benefit the estate, it will afterwards sanction it. 2 Lomax's Ex's, 283; 2 Wms. Ex's; 1 Putnam, Eq. Digest, pl. 214; *Norris* v. *Fisher*, 2 Ashm. 411; Story's Equity, § 1356, 1357; *Garret* v. *Noble*, 9 Eng. Ch. R. 380.

3. But suppose we are wrong in all this, what is to prevent us from proceeding against the estate, to the extent of the interest of those who have sanctioned and approved the administrator's acts; who, as is fully proved, gave their own notes, and ratified it.

If he acted without authority, so far as the heirs are concerned, unquestionably they could ratify it. They have done so. The act is not illegal, that is, criminal; want of power may be ratified, and executing these notes ratified it. 2 Cush. Rep. 80.

No want of consideration, original indebtedness, loss, delay, forbearance by words, &c., sufficient. 10 Ired. 72.

4. But all this is attempted to be answered in the answer. It insists all his acts as administrator are void, because the bond was not filled up. This seems the whole ground of defence, but the want of a bond does not do away the effect of the grant. The statute does not declare the administration void for want of bond. It can be given at any time. *Spencer* v. *Calhoun*, 4 Dev. 225; 5 Alabama, 264; 7 How. 311; *McDonald* v. *Rhodes*, 23 Miss.

5. It is also objected that Moses Ridley is not a good witness. He has no interest in this suit. He is not liable for costs. If the notes are paid by the estate, he is discharged; but in a proceeding against him by the heirs, he is liable. The decree will not avail him. It only goes to his credit.

But no objection appears from the record to have been made below. It cannot be made here, unless record shows it was made there. This court only acts as appellate. It cannot act where the chancellor has not acted upon a question of competency.

Woods *v.* Ridley.

*C. S. Tarpley,* on the same side,

Made an elaborate argument, and filed a labored brief reviewing the law and facts of the case at much length.

*A. H. Handy* for appellee.

1. Moses Ridley's deposition is inadmissible, because he is directly interested in the result of this suit. The effect of his testimony, if admitted and believed, is to make the estate of Henry Ridley liable on the bonds which he has signed as administrator, whereas his signature to the bonds, though as administrator, renders him individually liable, as will be hereafter shown. His testimony, therefore, goes to shift a liability from him to the estate.

This objection for interest may be taken at the hearing and upon the argument, as is now done.

2. The remedy, if any, is clearly upon the bonds set forth as the foundation of complainant's claim. These bonds are the cause of action. It is immaterial whether the obligors, the widow and children of Henry Ridley, are able to pay the money or not. If the complainant saw proper to discharge a supposed claim he held against H. Ridley's estate, and to take the obligation of his heirs and distributees in lieu of it, it was his own voluntary act, and he must submit to the contract. That the claim is purely a legal one, is clear, because it is admitted that suits at law have been brought on the bonds. What feature is there, then, in the matter, which could give a court of equity cognizance of it? It cannot be the allegation of the bill that, when the bonds were taken, it was understood that the estate of Henry Ridley was still to be bound, because, 1st. This is fully denied by the answer, and is not sustained by proof. 2d. The bonds are the evidence of the contract, and their extent cannot be enlarged by parol proof either in law or equity. Chitty, Cont. 99. 3d. The widow and heirs of H. Ridley, who are obligors to these bonds, could make no such agreement, because the estate was undistributed and they were incapable of making any agreement which would bind the estate before distribution, they being entitled only to such portion of it as shall ultimately be allotted to each. They could only agree that

each one's share, when allotted, should be separately bound, they could make no agreement binding upon the whole estate, (which is the object of this bill,) because there are other heirs and distributees not parties to any such arrangement, and whose rights would be affected by it. 4th. Moses Ridley could make no such agreement, because, 1st. He had no power to charge the estate in Mississippi, where he was not lawfully administrator, (as will be hereafter shown). 2d. Even if he was a lawful administrator here, he had no authority to make so unwarrantable an agreement to bind the estate by entering into new obligations, paying heavy interest, and keeping the estate unsettled for such a length of time, when he was at any time amenable to the probate court. 3d. If he could make such an agreement as administrator, his signature to the bonds operates as a purely legal obligation which must be sued on at law, and the judgment, when recovered, could be levied on the property of the estate. 4th. The nuncupative will of Henry Ridley in Tennessee, gave him no power to make such an agreement. The document admitted to probate as such will in Tennessee, cannot be regarded as a nuncupative will, because, 1st. No notice is shown to have been given to the next of kin and widow, as is required in such cases by the statutes of Tennessee, page 374, section 16, and for this reason the probate is void. *Rankin* v. *Rankin*, 9 Iredell, 156. 2d. The deceased never completed his testamentary disposition, as is manifest.

But if it can be considered as a nuncupative will, it can only be regarded as such, so far as it left his place to his wife, " I wish Betsy to have this place." This is the only specific disposition in the will. His remarks to Moses Ridley, " I want you to promise to settle my business; " " I wish you to do the best you can for me," are no part of the will, because they were remarks made before he was informed that he could make a verbal will, and before he undertook to declare before the witnesses what his will was. Such declarations are not to be received as part of the will. 4 Humph. 342; 3 Leigh, 140; 5 Pick. 404; 13 Ib. 45.

The testamentary capacity of the deceased, and the *animus*

*testandi* at the time of the alleged nuncupation, must appear by the clearest and most indisputable evidence. 2 Black. Comm. 501, note 17; 1 Wms. Ex's, 68; *Gibson* v. *Gibson*, Walker's Miss. R. 364; 3 Humph. 342; 8 Ib. 645; 10 Yerger, 510. Such wills are regarded with the greatest strictness, and are no favorites of the law.

At best, it only amounted to an appointment of Moses Ridley as executor, for it only expresses a wish that he would settle his business. 1 Wms. Ex's, 134.

And it appears that he never acted under the appointment, for he took out letters of administration and not letters testamentary, in Tennessee, and pretended to do the same thing here. Moreover, if he had pretended to act as executor, our statute incapacitates him from doing so without giving bond and security. This will did not give him power as a trustee, because no specification of trust was stated, and because this alleged power to Moses Ridley is not part of the will of the testator, but was contained in the course of remark before he undertook to declare his will.

It is contended in behalf of complainant, that a court of equity has jurisdiction because the money cannot be made under an execution at law, the estate being undistributed. If this be true, it was a great piece of folly for the complainants to take the bonds of the heirs instead of what they claimed to be a debt of the estate. But does this render it the less a purely legal obligation? By no means. It will be time enough for the complainants to resort to equity on this alleged ground, when they shall have obtained their judgment at law and it remains unpaid; for chancery never gives relief in such cases until the claim be established at law. 11 S. & M. 366; 2 John. Ch. Rep. 144; 4 Ired. Law Rep. 529; 1 Devereux, Eq. 103, 107; 1 Munroe, 105; Ib. 231; 10 Yerger, 133, 137; 5 Humph. 26, 35; Ib. 66.

If this was not so, any party having a debt against a person entitled to a distributive share of an estate, and such person having no other property than such undistributed interest in the estate, might sue such distributee in equity on the debt, and subject his share to the payment of it before any suit at law; nay, not

only such person's distributive share, but the whole estate, as is here claimed.

3. Moses Ridley's acts in regard to the estate in Mississippi were void, because he never executed any bond whatever as admihistrator here.   This is clearly a condition precedent to his trust, for the statute provides that before letters shall be granted, bond shall be given.   The authority of the court to grant the letters depends on this, and if the grant be made without this, an indispensable requisite of the power of the court is wanting, and the act of the court is without jurisdiction and void. The rule is different in England and in some of the United States.   But it is too plainly the policy of our laws and their positive provision, to admit of any doubt.   See Hutch. Dig. 656; 4 Humph. 104; 16 Wend. 579; 4 Humph. 79; Chilton on Probate Courts, 238, 239; Ib. 225, sect. 11; *Drane* v. *Bayless*, 2 Humph. 186.

The authorities cited by complainant's counsel are either upon common law principles or in virtue of the peculiar statutes of the States where the decisions are made, and cannot control and contravene the positive provisions and policy of our laws.   That policy manifestly is, that before any one shall be vested with the power to interfere with a decedent's estate, he shall give bond with approved security, which shall be filed in the clerk's office.   And if any one intermeddle with an estate without having performed this condition, and thereby obtained proper authority, he is an executor *de son tort.*

We are aware that it is often said in the books that the executor derives his authority from the will, and the administrator from his letters.   And this is entirely true by the common law. But the question arises, What are to be considered his letters ? Letters granted by the court having no jurisdiction, for want of compliance with an indispensable requisite to the jurisdiction in granting letters, are no letters.   Such administration is unlawful *ab initio*, for want of power in the court to grant letters, and the acts, both of the court and of the administrator, in consequence of it, are void.

There is a manifest distinction between a grant of letters without jurisdiction, which is void, and a grant obtained by

imposition or fraud practised on the court, the formalities required by law being complied with, which is merely voidable. Toller on Ex's, 128, 129.

And although a court may have general jurisdiction over a particular subject-matter, yet if the exercise of it depends upon a particular thing to be done, the court has not jurisdiction to act until that thing be done. Courts have general jurisdiction to render judgments and decrees ; but the exercise of that jurisdiction depends upon certain conditions, such as, generally, that the parties are actually in court or summoned and fail to appear, &c., and if these things are not complied with, any judgment is void without them for want of jurisdiction. And so it is with the probate court in regard to letters of administration.

The positions of complainant's counsel upon this point are all overthrown by this view of the subject.

He says, that as to persons dealing with the administrator, his letters are *primâ facie* evidence of his authority. Granted ; but if they are void, they afford no justification, because a party dealing with an agent or trustee, is bound to look to his authority.

Again ; he says the failure to take bond is a mere misfeasance of the clerk, as is held in Pennsylvania and Maryland. And so it may be there ; but it is not so here. The same remark is applicable to the cases of blank bonds cited from North Carolina.

Again, he says, whether letters of administration be void or voidable, a *bonâ fide* payment of a debt to the administrator is valid. The authority of 3 Term R. 125, cited as the foundation of this principle in Toller, 130, does not sustain it, because the case in 3 Term R. 125, was the case of an executor ; and there was a difference at common law between an executor and administrator, the executor deriving his authority from the will, and the administrator from his letters, so that this authority in Toller is not sustained by the case referred to as the foundation of it. But, be this as it may, this is but the common law principle, and our statute makes a material alteration in it, as is above shown. The appointment of the administrator being void for want of jurisdiction in the court granting

the letters, it requires no reason or authority to show that his acts are void, as absolutely as if they had never transpired. *Lewis* v. *Brooks*, 6 Yerg. 167.

Again, he says, that Hudnall and Dougherty being accepted by the court as sureties to the bond, and the bond in this form approved by the court, rendered the bond valid, although the paper was wholly blank, and so remains, except the three signatures at the bottom. But it is wholly gratuitous to say that the bond was approved in this form by the court, for the record shows no more (and there is no pretence of proof that any thing further was done) than that the court ordered " that letters be granted to Moses Ridley, on his entering into bond in the penalty of $140,000, with Thomas Hudnall and Samuel B. Dougherty his security." The condition of the grant was never complied with, and no bond appears ever to have been approved of.

. Again, he says, if Moses Ridley was administrator in Tennessee, he had power to bind the estate in Mississippi by contract, though not administrator here. It seems that many learned courts and jurists differ from the learned counsel on this subject. Story, Confl. Laws, § 512, 513, and the numerous cases cited in the notes. He has no extraterritorial power. Ib. 514.

Again, he says, if A. signs a paper in blank and delivers it to B., he thereby authorizes him to fill it up as he pleases. But a matter *in pais* is wholly different from an act required by law to be done in a particular manner, in order to give jurisdiction to a court. The persons whose names were signed to this blank paper could not have complained that it was filled up for a larger penalty than was agreed on between them and Moses Ridley. But although it would have been binding on them, it is still not a legal and valid bond, such as is required in order to give jurisdiction to the probate court to grant the letters of administration.

But even if the positions of counsel be correct in regard to the effect of the grant of letters to Moses Ridley, yet it nowhere appears in the pleadings or legal proofs, or by the record from the probate court, that any letters were granted to Moses Rid-

ley; and thus all the argument of complainant's counsel fails for want of the foundation on which it purports to be based. There is no proof whatever, except the deposition of Moses Ridley, which is not competent evidence for that purpose. Either the record of the grant of letters, or the letters themselves, should have been produced and proved.

1. The notes executed by Moses Ridley in 1840, (of which the bonds were given in renewal,) did not bind the estate of Henry Ridley, though signed by Moses Ridley as. administrator, because, 1st, they are made payable at a future day, and bear interest, which makes them the individual contracts of Moses Ridley, as is expressly held by this court in 3 How. 181; 2d, they were given for the most part on account of drafts drawn by Moses Ridley, purporting to act as administrator, on Dick & Co., which advances were in law made to Moses Ridley, and his notes for that consideration were his individual obligations. 6 Mass. R. 58; 8 Ib. 162; *Lowell* v. *Field*, 5 Verm. R. 218; 2 Eng. Com. L. R. 223; *Henderson* v. *Illsley*, 11 S. & M. 9; 22 Miss. R. 53. And of this, Yeatman, Woods & Co. are chargeable with full notice, because the notes were taken by them in payment of the account of Dick & Co., which clearly showed it, and they were bound to know the law and the extent of authority of the administrator with whom they were dealing; 3d, the notes were unwarrantable and illegal on the part of Moses Ridley, in stipulating to pay 10 per cent. on a claim already surcharged with heavy interest compounded, thereby creating a heavy charge upon the estate without legal authority; of all which the complainants are chargeable with legal notice, because they were making contracts with one who they knew was an administrator, and as such purported to make oppressive and illegal contracts to charge this estate. Such conduct on the part of administrators and others dealing with them can never be tolerated, especially by a court of equity, for otherwise estates would be placed at the mercy of exacting and usurious creditors, in collusion with fraudulent and dishonest administrators, who might plunder them at pleasure, and keep them unsettled without limit of time. Should such conduct be sanctioned, and that by a court of equity, it

would be a license to administrators to manage estates accord-
ing to their will and pleasure, instead of the wholesome re-
strictions of law, and any administrator who indulges the wild
fancy or knavish idea that he can benefit the estate and pro-
mote the interest of the widow and orphan by borrowing money
at 12½ per cent. charge, and adding this to the principal, and
upon this amount again stipulating for the ruinous compound
interest of 10 per cent., and then again adding interest to prin-
cipal, and upon this whole compounded amount agreeing for 8
per cent. interest, thus heaping interest on usury, to involve
an estate in irretrievable ruin. It must be manifest to any
practical man, that such policy as was pursued by Moses Rid-
ley must ruin or deeply injure any estate; and if this has not
been the case with this estate, it must stand forth as an excep-
tion to all other estates, and to the rules of sound practical
sense. And there is no specific and satisfactory showing to
convince the mind that this estate was benefited by this course
of conduct; it all rests in the vague and general deduction of
the very party who has done the wrong.

And here we cannot but remark, in regard to the benefits
resulting to this estate from this policy, (of which so many
round and sweeping assertions are made both by witnesses and
counsel,) that if Moses Ridley had performed his plain duty as
prescribed by law, and sold property in 1835 and 1836 at the
enormous prices which it then brought, to pay the debts of the
estate, it would have been incomparably better for the heirs
than the ruinous policy he states he has pursued. All the legal
claims against it would have long since been paid, and a hand-
some portion of this large estate would have been distributed
among the heirs, and been yielding income to the minors;
whereas, it is now loaded with a heavy debt, (as is alleged,)
vexatious litigation in three several courts on the same claim,
and confusion, suspicion, and mystery marking every act of the
person who has undertaken to manage it. It appears by the
showing of this disinterested witness and magnanimous patron,
guardian, and administrator, that he estimated Henry Ridley's
debts, at his death, to be about $65,000. It appears by the
accounts of Dick & Co., filed, that the proceeds of crops which

Woods v. Ridley.

went to them amounted to about $35,000 up to 1840, and for the following eight years in which he received the crops, they must have amounted to at least $50,000, as is above shown — thus making $85,000 which have come to his hands. Notwithstanding this, instead of paying the legal debts of the estate, for which the assets received were ample, even according to his exaggerated statement of the debts, there is now this alleged debt of the complainants of between $40,000 and $50,000 against the estate. And this is the result of the "superior management" of this judicious administrator and veracious witness, by which he has pocketed a large portion of the estate, and has utterly failed to render the scratch of a pen in any court showing his actings and doings and "superior management" of the estate; and after having rendered himself individually liable by his illegal and outrageous execution of the notes in 1840, he. has most generously and affectionately contrived to shift, as he thought, the liability from himself, and to saddle it upon the young and inexperienced and confiding children of his brother and his widow, by taking up these notes and prevailing upon them to execute in their place the bonds now sought to be enforced. This, indeed, is a specimen of "superior management," in which counsel may well exult. It shows a decided superiority to all the dictates of law, duty, or humanity.

2. These notes of 1840 were usurious, illegal, and void as to the estate of Henry Ridley, because they contracted to pay ten per cent. interest, which is usurious by our laws. These notes were executed in Mississippi, as is proved by Mr. Hill and Mr. Walker, (see answer to fourth cross-interrogatory to Mr. Hill, and answer to first cross-interrogatory of Walker to deposition in Madison circuit court).

But it is said these notes were payable in New Orleans, where ten per cent. interest is legal upon such transactions. We readily admit that if this purported to be an individual contract, the principle alluded to would have made this interest legal, because the law of the place of performance governs the contract. But we insist that this principle cannot and does not apply to an administrator. An administrator is known only to the law of the place of his appointment. He derives his authority

12 *

solely from that jurisdiction. He has no extraterritorial power (Story's Confl. Laws, § 514; 3 Penn. R. 185) ; consequently, he could make no contract to be performed when he had not the right or power to perform it. The jurisdiction which appoints him in Mississippi or Tennessee, only gives him power to act within that jurisdiction, and all contracts entered into by him to be performed without the sphere of that jurisdiction, are null and void, as to the estate, and against the policy of the law, and if he interfered with any property or assets situate or found in Louisiana, he became an executor *de son tort.* 7 Cow. 64; 2 Gill & Johns. 504. The local jurisdiction acts only in reference to its own laws, and the trust reposed in the administrator is limited by such laws. He has a delegated or trust power alone, conferred by the probate court; he is the trustee appointed by the court here to administer the estate here, and to act as administrator here only. This is manifest from all the rules and principles affecting the appointment, character, duty, and powers of an administrator. And it is by virtue of these principles that our statute so emphatically prohibits an administrator from "removing any property whatsoever" out of the limits of this State, "under any pretence whatsoever." See Hutch. Dig. 665, § 93.

We insist, therefore, that these notes were either void as to the usury, or absolutely void for illegality and want of power in the administrator to make them, so far as they affect H. Ridley's estate.

3. The bonds embraced in this suit are but a renewal and continuation of the same indebtedness as the notes of 1840, and are subject to the same taint and illegality. Therefore, neither the original nor substituted obligations are charges upon the estate of H. Ridley. *Coulter et al.* v. *Robertson,* 14 S. & M. 29, and authorities cited by counsel in that case, p. 21.

4. Moses Ridley was incapable of creating any charge upon the estate in Mississippi, because he had no power to do any act in Mississippi affecting the estate here, as is above shown.

5. It is admitted by Moses Ridley, that it was by his procurement that the bonds involved in this suit were executed, and that Yeatman, Woods & Co. were privy to the arrangement.

True, he labors hard to prove that the other obligors were well acquainted with the affairs of H. Ridley's estate, and his acts in regard to it. But it is impossible that they could have had such knowledge, because he was the only person who could give the information, and he had failed to render any accounts, or to furnish such data as would enable any one, especially inexperienced youths and minors, to understand it. He does not pretend that he gave them any detailed information. He only alleges that he explained it to them, and that they saw copies of the annual settlements with Dick & Co., and probably saw Mr. Hill upon the subject. The conviction must force itself upon the mind from his own statements and the attending circumstances, that they must have acted in blind confidence of him, and of his assurances that it would benefit the estate to execute the notes, at the same time carefully concealing from them all the particulars of his unwarrantable, fraudulent, and ruinous acts, both of failure and violation of duty in regard to the estate, falsely stating to them that the estate was liable by reason of his acts, and operating upon their fears by stating that unless this " arrangement was made," the estate would be sold out and sacrificed.

It is manifest that he had a deep interest in inducing these heirs to execute these bonds, for he thereby took up his personal indebtedness created by the notes of 1840, and, as he supposed, shifted it upon the estate of his wards, who were to " become primarily liable." Actuated by this motive, and in collusion with these " rich bankers," (who have so led captive the counsel's imagination,) who were, doubtless, well pleased at the facility with which they could obtain enormous interest, and that continually compounded, at the hands of this pliant administrator, he did not scruple to take advantage of the ignorance and credulity of his luckless wards. But the law condemns such a transaction as a fraud. The fact that the " arrangement" was made by M. Ridley with his wards, who had recently come of age, and without a settlement of his administration accounts, stamps it as a fraud upon the wards, and renders it necessary that every shade of suspicion be removed, otherwise it will stand condemned as a fraud. Story's Eq. Jur. § 317, 319, 320; McPherson on Infants, 261; 31 Law. Lib. 175.

Mr. Chief Justice SMITH delivered the opinion of the court.

This suit was brought in the superior court of chancery, for the purpose of charging the estate of Henry Ridley, in the hands of his administrator, with the payment of certain claims held by the complainant as the surviving partner of the firm of Yeatman, Woods & Co.

The bill alleged that Henry Ridley died in 183–, in Madison county, Mississippi, possessed of a large estate, consisting of land, slaves, and stock, which, with the increase, was still in said county; that Henry Ridley was indebted to Yeatman, Woods & Co. in a large sum of money, for which he had executed his notes; that Moses Ridley, administrator on his estate, and finding it greatly involved in debt, and believing that it would be ruined if these claims were pressed against it, proposed to renew the debt due to Yeatman, Woods & Co., and to give security, provided time should be given. This proposition was accepted, whereupon Moses Ridley, as the administrator, jointly with Elizabeth, William A., Samuel J., and Henry Ridley, who signed as sureties, executed five notes each for the sum of $8,560. These notes bore date at New Orleans, on the 1st of April, 1845, and were payable one, two, three, four, and five years, with interest from date, at eight per cent. per annum. The claims of Yeatman, Wood & Co. were proved according to law, and were known and acknowledged to be just by the administrator. The sole consideration of the notes was the debt due by Henry Ridley; and it was expressly understood that the execution of the same was not to operate as a release to the estate. But, on the contrary, it was to remain bound. The notes were made payable to Moses Ridley, and expressed upon their face, that they were given on account of the estate; and when this arrangement was consummated, the original notes of Henry Ridley were delivered to Moses Ridley.

The bill alleged further, that at the January term, 1849, of the court of probates of Madison county, the defendant, Samuel J. Ridley, was appointed administrator of the estate of Henry Ridley, in the place of the said Moses Ridley, and as such, had continued to act up to the time of filing the bill; that he had refused to pay the said notes; that complainant had in-

stituted suits thereon against the makers, whom he believed to be unable to pay them; and that in consequence of the execution of the said notes, complainant was without a legal remedy to enforce payment from the said estate in the hands of the administrator.

A general demurrer was filed by Samuel J. Ridley, which was overruled. An answer was then filed by this defendant, and a *pro confesso* taken as to the others.

In the answer it was stated that Henry Ridley died in the State of Tennessee, in 1835, owning a large estate in Madison county, Mississippi, which, with the increase, was still in that county; that the decedent was not indebted, at the time of his death, to the firm of Yeatman, Woods & Co., and that he never executed any notes to them as charged in the bill; that Moses Ridley assumed to act as administrator on the said decedent's estate, but that he acted without authority, never having given bond as such, as is required by the statute; that neither the complainant, nor the said firm of Yeatman, Woods & Co., had any just or legal claim against the said estate, and that none such was ever proved against it in this State; that defendant had no knowledge whether said claims were in fact ever admitted to be just charges against the estate, by the said Moses Ridley; but that if any such admissions were ever made, they were made without authority to bind the estate of the decedent in Mississippi; and that no such claims were ever known to, or admitted by, the defendants to be just. It was true as alleged, that the notes were executed by the defendants; and expressed upon their face that they were given for and on account of the estate; but that the notes were given upon the representations and at the solicitation of the said Moses Ridley, who possessed the entire confidence of the defendant, Mrs. Elizabeth Ridley, who was the widow of the deceased, and had unbounded influence with the other defendants who were once his wards, and had then but recently arrived at the age of majority. The defendants signed the said notes upon the representation of the said Ridley, that it would be for the benefit of the estate for them to do so; and that they complied with his request, relying upon his representations, not having any knowledge or informa-

tion of the particulars of the matter, or the manner in which the estate was thereby to be benefited; and that the execution of the notes was procured fraudulently, by the undue influence which the said Ridley exercised over the defendants.

It was further denied, that it was understood or agreed by the defendants, when the notes were executed, that the estate was not thereby to be released; but, on the contrary, was to remain bound for the original debt. It was insisted, if any such agreement was made by the complainant and Moses Ridley, it was void as to the decedent's estate in Mississippi. It was admitted that the defendant, Samuel J. Ridley, was appointed administrator of Henry Ridley's estate by the probate court of Madison in 1849; that he had continued to act as such up to the time of filing the bill; that the defendants were unable to pay the debt demanded by the complainant, independent of their interest in the said estate; that suits were, as alleged, instituted on the notes, and that complainant had no remedy at law; but denied that he had any right in equity to enforce payment of the debt from the estate of the decedent in the hands of the defendant.

The bill, upon this hearing, was dismissed, and an appeal was taken to this court.

It was in proof that Henry Ridley, who died in 1835, at his residence in the State of Tennessee, was possessed of a large estate, situated partly in said State, and partly in the county of Madison, Mississippi. The property in Madison county consisted of a plantation, stock, and a large number of slaves. The said decedent, previous to his death, made a nuncupative will, which, in August, 1835, was admitted to probate in the county court of Rutherford county, Tennessee, and letters of administration with the said will annexed, were, in the November following, granted to Moses Ridley. An authenticated copy of the will was presented and admitted to probate in the court of probates of Madison county in December, 1835, and an order was made, granting letters of administration to the said Ridley upon his entering into bond in the amount and with the sureties named and designated in the order. There was no formal or valid execution of the bond directed by the order, but

a paper, or blank bond, was signed by Ridley and the sureties, and filed in the office of the clerk of said court. Appraisers of the estate were, at the same term, appointed, and Ridley took possession and proceeded to act as the administrator.

Henry Ridley died, leaving eight children, who were his heirs and the distributees of the estate, seven of whom were surviving when the bill was filed. Mrs. Elizabeth Ridley, the widow of the deceased, and three of the heirs, are the defendants to the bill.

The estate in Madison county was purchased on a credit by Henry Ridley, and at the time of his death, he owed nearly the whole amount of the purchase-money. N. & J. Dick & Co. were his factors in New Orleans, with whom he had transacted his business for some time previous to his death, and who then held a claim against him arising upon their acceptance of two drafts, which in the aggregate amounted to about $12,000. Moses Ridley, affecting to act as the administrator, continued to transact the business of the estate with N. & J. Dick & Co. He shipped the crops produced on the plantation in Madison county to them, and drew bills to a large amount. The proceeds of the crops were applied to the payment of the debt due by Henry Ridley, and of the bills drawn by Moses Ridley. The business was conducted in this manner down to the 30th of April, 1840; at which date, as it appears from the exhibits attached to the deposition of H. R. W. Hill, a member of the firm, that the net proceeds of the cotton shipped by Moses Ridley, and sold on account of the estate, amounted to near the sum of $35,000. At the same date the balance claimed by N. & J. Dick & Co., against Ridley, as the administrator, based on acceptances and money advanced to him, amounted to $30,560.

It appears from the testimony of Moses Ridley, which was objected to on the ground of his interest in the result of the suit, that when he took possession of the estate as the administrator in 1835, he found it greatly embarrassed with debts, which, in the aggregate, exceeded the sum of $65,000, and which, if pressed by the creditors, would cause the entire ruin of the estate. He was very desirous of managing the estate so as to

free it from debt, and to save something, if practicable, for the heirs of Henry Ridley; and, believing that it could be worked out of debt, if indulgence could be obtained, he endeavored to concentrate the debts, and for that purpose, and in pursuance of an understanding with N. & J. Dick & Co., he drew bills upon them, with the proceeds of which he paid off other creditors of the estate. In pursuing this course, he carried out an understanding which existed between that firm and the decedent at the time of his death; he used his own credit, and consequently put at hazard his own estate, and in the whole of the transactions, he acted from a sincere desire of benefiting the estate in his charge.

When the accounts of Moses Ridley were closed with N. & J. Dick & Co. at the time above stated, that firm was indebted to Yeatman, Woods & Co.; and Ridley, pursuant to an understanding between the parties, gave them notes of $10,189.56 each, which Yeatman, Woods & Co. accepted in payment of so much of their debt. They gave credit to N. & J. Dick & Co. for the amount of the notes, and Ridley, as administrator, was credited with the said balance of $30,568. Ridley continued to ship the crops to N. & J. Dick & Co. until 1849, when the defendant, Samuel J. Ridley, was appointed the administrator. The record contains no satisfactory evidence in regard to the amount or value of the crops raised on the plantation from 1840 to 1849; but if we take the value of the crops reared before 1841, as the criterion by which to determine the value during the whole time Moses Ridley had charge of the estate, we must conclude that it exceeded the sum of $80,000.

A general payment was made by Ridley, in 1842, to Yeatman, Woods & Co.; and in 1845, five notes amounting in the aggregate to $42,800 each, were given by Moses Ridley as administrator, jointly with the defendants, for the balance of principal and interest then due upon Ridley's original notes to that firm. The notes made by Ridley and the defendants were payable in one, two, three, four, and five years, and bore interest from date, at the rate of 8 per cent. per annum. Ridley rendered no account of his acts as administrator, either in the proper court in the State of Tennessee, or to the court of pro-

bates of Madison county. He made no showing whatever of the moneys which came into his hands, arising either from the sale of the crops or from any other source. The estate of Henry Ridley remains unsettled and has not been distributed, but is still in the possession of the defendant, Samuel J. Ridley, as the administrator.

Several important questions arise upon the foregoing facts. The first of these is the question whether or not Moses Ridley, by virtue of the grant of letters of administration *cum testamento annexo*, had authority, by the execution of the notes for the purposes and in the manner described, to charge the estate of the decedent.

The affirmative of this proposition is maintained by the appellant. It is insisted on his behalf, that this authority was expressly conferred by the will, and if not, that the power to charge the estate by these contracts, existed as a part of the general authority of Ridley as the administrator.

Henry Ridley, as we have seen, made a nuncupative will which was admitted to probate, both in Tennessee and Mississippi. To ascertain its provisions, and the nature and extent of the powers conferred upon Moses Ridley, who took out letters of administration with that will annexed, it is necessary to revert to the circumstances attendant upon its execution.

The deceased was attacked with cholera on the 22d of July, 1835. At first, it was thought, he was not dangerously ill; but in a short time he grew worse. Moses Ridley, who was a brother of the deceased, was sent for; and when he arrived, the disease had made rapid progress, and was assuming its malignant form. When Moses Ridley entered and approached the bedside, the deceased turned towards him, and as he clasped his hand, exclaimed, " Oh, my brother, my brother, I wish I could have a few moments' ease, that I could talk with you; I want you to promise to settle my business." On being asked if it was the whole or a part of his business, he replied, " The whole; I wish you to do the best you can for me; I wish James Morton to be made safe." He was asked by Moses Ridley how he was to ascertain the situation of his business? He said, " You must hunt it out yourself; you can ask James Morton, he

knows more about it than anybody else.   Soon afterwards he exclaimed, " If I had time, I would make a will."   Moses Ridley then remarked, If he would mention his will before the gentlemen, it would answer as well as if written; that Mr. Rabb was present, who understood the nature of such matters.   The deceased spoke quickly, and said, " I wish Betsey (his wife) to have this place," when he was stopped by a spasm.   After the lapse of a few moments, he was asked what else he wished his wife to have?  but before he could answer, a recurrence of the spasms, and their continuance in quick succession prevented any further conversation on that or any other subject.

The statute of the State of Tennessee, in regard to nuncupative wills, embraces substantially the provisions of the statute of 29 Charles 2, in reference to the same subject.   It declares that no nuncupative will " shall be good where the estate exceeds two hundred and fifty dollars, unless proved by two witnesses present at the making thereof; and unless they or some of them were specially required to bear witness thereto by the testator himself; and unless it was made in his last sickness in his own habitation or dwelling-house, or where he had previously resided ten days at least, except he be surprised with sickness on a journey or from home, and dies without returning to his dwelling."

Nuncupative wills have never been regarded with favor by the courts; they are, however, if duly proved, equally entitled to be established with written wills.   But much greater strictness is required, in several respects, in the proof of wills of this character, than in the proof of written wills.   If the proof fail in establishing a strict compliance with any one of the provisions of the statute, according to the unvarying current of decisions in England and this country, it will be fatal to a case of this description; for example, the *rogatio testium* which is, as we have seen, required by the statute of Tennessee; and which is, in truth, the evidence of the *animus testandi*, must be clearly and strictly proved, or it will not be a valid nuncupative will. *Winn* v. *Bob*, 3 Leigh, 140; *Prince* v. *Houghton*, 20 J. R. 502; *Talby* v. *Butterworth*, 10 Yerger's R. 501; 3 Humph. 342.

The will in question was admitted to probate in a sister

Woods *v.* Ridley.

State, as well as Mississippi; and it is not our purpose, if it were competent for us to do so, to declare the probate of it void. Our object is to ascertain what was the will which was in fact proved and admitted to probate. In proceeding to do this, we would remark that no words used by the deceased, which were not of a testamentary character, can, upon any principle, be regarded as a part of the will, although spoken at the time when it was made. The following words, therefore, " I want you to promise to settle my business;" " The whole;" " I wish James Morton to be made safe;" " You must hunt it out yourself; you must ask James Morton; he knows more about it than anybody else," are not to be held as constituting portions of the will. Upon no principle can these declarations be considered an act of a testamentary nature; even upon the admission that they were made *animo testandi*. At most, they could only amount to an appointment of his executor. I Williams' Exec'rs, 134. But it is very clear that they cannot be held to have such an operation, as the deceased did not, when he made these declarations, think he was making his will. He had previously expressed no such wish or intention. He seemed only desirous of conversing with his brother concerning the condition of his affairs. It was not until after he had used the words above last quoted, that he exclaimed, " If I had time, I would make a will." This was the first intimation of such a desire. It is manifest, therefore, that whatever the deceased had previously said, constitutes no part of the will. Upon making the exclamation above quoted, the deceased was informed that if he would mention his will to the gentlemen present, it would answer as well as if it was written. The deceased then said quickly, and without having declared his intention to make a will, or having called upon any one present to bear witness thereto, " I wish Betsey to have this place." It is not our purpose to criticize the action of the county court in admitting the will to probate, but to ascertain simply what that will was. It appears to us upon the most indulgent view which can be taken of the subject, that no portion of the statements or declarations of the deceased can be regarded as his will, except the single declaration by which he expressed a

wish that Mrs. Ridley, his wife, should have the place he then lived on.

If we are correct in this conclusion, it is not to be questioned, that the administrator with the will annexed, possessed no power or discretion in regard to the settlement of the estate, which would not attach upon the appointment of an ordinary administrator.   There is, therefore, no foundation for the position that Moses Ridley, by virtue of the powers conferred in the will, had authority to bind the estate by the execution of the notes as alleged in the bill.

The next question to be examined is, whether Moses Ridley, by virtue of his general powers as an administrator, could bind the estate at law by the execution of the notes in question.

It is unquestionably true, as a general rule, that an administrator can make no contract or create any new debt, by which the estate of his intestate would be chargeable at law.   In *Sims* v. *Stillwell*, 3 How. 181, it was said by this court " that an executor is individually responsible, although he expressly promise to pay, ' as executor,' where the nature of the engagement necessarily creates an individual liability, where, for example, he makes a promissory note or other written contract, where it does not clearly appear that it was given or made for a debt or liability of the testator, or if it be made to pay at a future day with interest, which necessarily makes it the debt of the executor individually."

In the case of *Steele et al.* v. *McDowell et al.* 9 S. & M. 193, the doctrine is laid down, " that an action against an executor, upon a promise made by him as such, when the debt is created after the testator's death, can only be maintained when it affirmatively appears that there was a clear and just liability on the part of the estate."   This case seems to recognize the right of the creditor, at his election, where the promise of the executor is based upon the liability of the testator, to procure against the executor as the representative of the deceased, or to charge him personally for the debt.   This is certainly a departure from the rule laid down in *Powell* v. *Graham*, 7 Taunt. 581 ; *Ashby* v. *Ashby*, 7 Barn. & Cress. 444 ; *Childs* v. *Mornins & Bowles*, 6 Eng. Com. L. R. 200 ; which was fully recognized

in *Sims* v. *Stillwell*, and which has been recognized by courts in this country of the highest respectability.

When an executor or administrator pays a debt or discharges a contract which constituted a just charge against the estate of his testator or intestate, out of his private funds, he will be entitled to an allowance for the same in his administration account. But it has never been holden by this court that an action could be maintained against an administrator, in his representative character, upon a promise to pay money borrowed by such administrator, on the ground that it was so obtained for the benefit of the estate. An administrator certainly, as a general rule, has no right as such to stipulate for the payment of interest. He takes the place of the intestate as to all of his existing contracts. It is his duty to discharge them in the manner pointed out by the law. He can waive no defence to which he is entitled by the law, and hence he is incapable of enlarging any contract entered into by the intestate.

Tested by these principles it is manifest that the notes given to Yeatman, Woods & Co., by Moses Ridley and the defendants as joint makers, did not bind the estate of the deceased. They were given for a debt created by bills drawn on the house of N. & J. Dick & Co., not by the deceased, but by the administrator himself. They were in fact given for money advanced to him. They were made payable at a future day, and in renewal of notes previously executed by him, which stipulated for the payment of a rate of interest which, as the administrator either in Tennessee or Mississippi, he could not legally contract for. Leaving out of view for the present any equitable right which the complainant may have to stand in the place of Moses Ridley, and in that view to charge the estate for the amount of money actually applied in the payment of the just debts of the deceased, unquestionably the execution of the notes themselves imposed only a personal obligation on the makers, and could not affect the estate.

But if it were conceded, as contended for, that these notes created a valid charge against the estate; the concession would be fatal to the complainant. For upon that hypothesis he would have a clear right to enforce the payment of them out of

13 *

the estate, by an action at law against the present administrator. Upon that assumption, the case in no respect would be different from that of one in which a creditor holds a legal demand against the estate of a decedent, clearly and certainly recoverable by an action at law against the representative. It will surely not be contended, that in such a case a court of equity could entertain jurisdiction.

The complainant not having a right by an action at law to charge the estate, the question next to be considered is whether he can, by a proceeding in equity, subject it to the payment of the amount due upon the notes.

If the complainant has any right, in equity, to recover, such right is based upon the ground that the notes in question were given either in payment of the just and legal debts of the deceased, or of money advanced to Moses Ridley, acting in the character of the administrator, and which was in fact employed by him in the payment and discharge of the debts of the deceased. Upon no other hypothesis could any equitable claim attach in favor of complainant, as against the estate.

Notwithstanding it is incompetent for the administrator, by his contracts or promises, such as we have been considering, to impose any debt upon the estate of the intestate, it is not to be controverted that if he with his own money pay the debts, he will be entitled to charge the estate in his administration account with the amount of the debts so paid, to save the effects sold for the payment of his claim. He would also have the right by bill in equity to enforce the payment of his demand against the heirs and distributees, in case the estate had passed into their hands.

It appears to be settled also, that where an executor or administrator has given his own note in payment of a debt of the testator or intestate, the estate would not thereby be released, unless such was the agreement of the parties; and this although the executor may have settled and given himself credit in his account for the debt. In such a case the creditor might, at his election, hold the executor personally liable, or proceed by bill against the estate. *Brouly* v. *Peters*, 10 Peters, 140; *Douglas* v. *Fraser*, 1 Rich. Eq. R. 105.

Woods *v.* Ridley.

Persons dealing with the representatives of a deceased person, are presumed in law to be fully apprized of the extent of their authority to act in behalf of the estate which they represent. Hence, in the case of an ordinary administrator, they are presumed to know that he has no authority, as such, to make new contracts which will bind the estate in his charge; such, for example, as contracts for the loan of money even upon the pretence that it is needed to pay the debts. A person, therefore, who, under such circumstances, advances money to an administrator, acquires no right either at law or in equity as against the estate. His equity only arises in case the money advanced has in fact been applied to the payment of debts for which the estate was justly and legally bound. In such cases the creditor of the administrator will be permitted to take his place, and will be subrogated to his rights. But reason, as well as sound policy, requires that it should be shown by the clearest evidence that the estate has been benefited, or, in other words, that the money has been applied beneficially and in the payment of the debts.

Let us apply these principles to the case at bar. We think it will appear evident, that the complainant is not entitled to relief in this court.

Moses Ridley qualified as the administrator of the deceased's estate in 1835, in the State of Tennessee. He obtained an order from the court of probate of Madison county, in December of the same year, granting letters of administration, upon his entering into bond with security as required by the statute. He failed to execute any bond which would either bind himself or his securities, and it does not appear, by any competent evidence, that letters were ever issued to him in this State. He took charge of the effects of the deceased, both in Tennessee and Mississippi, and failed in every respect to discharge the duties which devolved upon him as the administrator. He returned no inventory, nor did he render an account to the proper court in Tennessee, or to the court of probates in Madison county, of a single act connected with the administration for fourteen years, during all of which time he continued to receive and

appropriate the crops produced on a large cotton plantation. The evidence in reference to the entire value of the crops, is very imperfect and unsatisfactory. They were sent to N. & J. Dick & Co. at New Orleans, and sold on account of the administrator. Their aggregate net value, up to the 30th of April, 1840, amounted to somewhere about $35,000. Hence in the absence of definite and satisfactory evidence as to their value, from 1840 to 1849, it may be presumed that their entire value, from 1834 to 1849, greatly exceeded the debts of the estate, which, according to the administrator's own testimony, amounted to about $65,000. When this bill was filed, the amount of principal and interest, alleged to be due upon the notes, exceeded the sum of $51,000. In effect, therefore, the debts were reduced but $14,000. Deducting the interest yearly accruing upon $65,000, the amount of the debts of the deceased, and the net annual value of the crops would fall short of one thousand dollars. If this view of the transaction is not explained by reliable and satisfactory evidence, the conclusion cannot be avoided, that there was, at the least, exceedingly injudicious management on the part of the administrator. If we turn to the evidence in the record, the prospect will not be greatly improved.

Moses Ridley was the principal witness for the complainant. We have stated that his testimony was objected to on the ground of interest. The objection does not appear to have been made in the court below, but was made in this court for the first time. It is now too late to object to it on the ground of incompetency. But if this witness had such an interest as should have excluded him, if objected to in time, the objection will go to his credibility.

We have no doubt that Ridley was an incompetent witness. He was personally liable upon the notes, and suit had been brought to charge him accordingly. He would have been relieved from that liability, if the complainant had succeeded in subjecting the estate in payment of his claim. He had, therefore, an evident interest in the success of the party for whom he was called as a witness. For although he might not thereby be discharged of his obligation to account with the estate,

nevertheless he would be released from a present and certain responsibility, and his ultimate liability would, thereby, be made to depend upon the uncertain issue of the litigation thereafter to be waged with the distributees.

Further, when we look at the ground on which alone the complainant could be entitled to recover, the incompetency of this witness will appear still more evident. If funds were advanced by the complainant to the administrator, and by the latter applied in payment of the debts, or to some useful and beneficial purpose of the estate, whereby, upon the settlement of his accounts, the estate would be found to be justly indebted to him, the complainant, under a given state of facts, would, in equity, be entitled to take the place of the administrator. Upon no showing short of this would the complainant have any title to relief. It is hence manifest, that the witness had a direct interest in the result of the suit. If he proved the equity of the complainant's demand, he could do so only by establishing the justice of his own claim to repayment from the estate. Independent of the interest which the witness manifestly had in the result of the controversy, there were other circumstances connected with his relations to this litigation, and inferences arising from his own evidence, which compel us to look with some suspicion upon his testimony, and to receive it with many grains of allowance.

Moses Ridley, as we have seen, has never settled with the estate of the deceased. But waiving the objection that the court of probates, in regard to the settlement of the accounts of executors and administrators, has exclusive jurisdiction, and hence that it is not within the competency of the court of chancery to order an account to be stated between an executor and the estate of the testator, let us endeavor to ascertain whether we would be justified in holding that Ridley has any claim whatever upon the estate.

According to Ridley's own statement, the estate owed, at the time he was appointed the administrator, $65,000. This statement is not borne out by the vouchers filed with his deposition, assuming that the vouchers themselves would be sufficient evi-

dence on which to base the action of this court. But when we examine them we find that they are receipts for the payment of claims, at least much the greater portion of them, which were not authenticated in conformity with the directions of the statute. Hence, that he was not authorized to pay them. Even the claim of N. & J. Dick & Co., which appears to have formed the nucleus around which was collected the various claims alleged to be the debts of the deceased,'was neither proved nor allowed in the manner pointed out in the law. Another claim of $10,000, which was a note payable to Warren, and made by Thos. S. Anthony, was neither proved nor allowed, and the record contains not the slightest evidence that this note was ever claimed to be a debt of the deceased. The debt of Lee, Maddox, & Co., of upwards of $14,000, which arose out of their acceptance of the joint drafts of Jas. Morton and the deceased, was taken up by the firm of N. and J. Dick & Co., and charged to Ridley without ever having been allowed by the judge of probates. It is not pretended that these may not have been just debts of the deceased, or that Ridley did not act in good faith in discharging them; but he was not justified in paying them, and when he did so, he acted at his own peril. In the present attitude of this case, the evidence, in our opinion, was not sufficient to establish them as just demands against the deceased's estate.

But if it were conceded that the debts amounted to the sum of $65,000, and that they were paid off or taken up by the administrator, by the substitution of his own obligations, it would not follow that Ridley was the creditor, even to the amount of his substituted obligation. This could only be shown by a comparison of the debts which were paid off, or assumed by him, and the amount of the funds of the estate which came into his hands. Having failed to render any account of these, and the complainant having failed to adduce any reliable and satisfactory evidence in regard to that subject, it is impossible for this court to say, that the estate was indebted in any amount whatever to Ridley.

There are several other questions of interest, but of minor

importance, presented by the record. As a determination of them any way would not produce a change in the result of our examination, we deem it unnecessary to notice them.

Let the decree be affirmed.

HANDY, J., having been of counsel, took no part in this decision.