W. H. CLOPTON, ADMINISTRATOR, *v.* SAMUEL J. GHOLSON ET AL.

1. EXECUTORS AND ADMINISTRATORS. *Contracts. Attorney's fees.*
   Ordinarily, debts contracted by executors and administrators are obligatory only as personal obligations, and cannot primarily bind the estates committed to them, except in cases specially authorized by statute. This has been repeatedly held true of attorney's fees due for professional services in the management of estates.

2. SAME. *Creditors. Attorneys. Substitution and subrogation.*

Under some circumstances attorneys or other creditors of an administrator may, under the principles of substitution and subrogation, reach the assets of the estate; but such relief must be based upon the fact that the administrator himself either already has some claim against the estate, or would be entitled to one by payment of the demand of the creditor, and upon the further fact that the creditor is unable to obtain satisfaction from the administrator.

3. SAME. *Creditor. Substitution and subrogation. Primary proceedings.*

A creditor of an administrator, who is entitled to be substituted or subrogated to the rights of the administrator against the estate, may proceed in chancery primarily against the estate, without having sued the administrator at law; but in such proceeding the creditor must show the impossibility of obtaining payment from the administrator, as well as establish all the other facts necessary to maintain the suit.

APPEAL from the Chancery Court of Monroe County.

Hon. O. H. WHITFIELD, Chancellor.

James H. Haughton and John C. McNairy were executors of the last will and testament of Thomas Brandon, deceased. In the years 1865 and 1866 they delivered to the law firm of Davis, Haughton & Gholson for collection a great many claims, aggregating a large amount due the testator, Thomas Brandon. This law firm brought many suits in the various courts of the State with due diligence, skill and success, and in all respects gave prompt and proper attention and care to the said claims, for the purpose of collecting them. But nearly all of the claims proved to be worthless, and after applying the whole amount collected in payment of their fees there was still due the attorneys several thousand dollars. The fees charged were usual and legitimate, according to the custom and standard at the Aberdeen bar in said county of Monroe. The executors, James H. Haughton and John C. McNairy, both died, the former in 1868 and the latter in 1870; but McNairy had resigned his executorship some time before his death. In the year 1869 W. H. Clopton was duly appointed administrator *cum testamento annexo* of the estate of said Brandon, deceased.

On the twenty-third day of April, 1873, Samuel J. Gholson, S. B. Haughton and L. Haughton, as owners and holders of the claim of Davis, Haughton & Gholson, filed their bill in

chancery against W. H. Clopton, administrator, to subject the assets of the estate of Thomas Brandon, deceased, to the payment of their claim. The defendant demurred to the bill of the complainants, because, as alleged, if the complainants had any remedy, it was at law, and not in equity, and because the bill showed no equity upon its face. The demurrer was overruled, and the defendant answered. Upon final hearing a decree was rendered for the complainants, from which an appeal was taken to this court.

*Sale & Dowd*, for the appellant.

The bill shows on its face that the complainants have no right to implead *this defendant*, the administrator *de bonis non* with the will annexed, in the first instance, in any court.

The special contracts by which the firm of Davis, Haughton & Gholson was retained, and under which the account for their compensation here sued for was created, were made directly and expressly with one of the executors, James H. Haughton, and most of the services charged for were rendered and dated during his administration. Unless specially authorized by the will, he could create no debt legally binding upon the estate, or upon which his successor in the administration could be sued at law. He should either have paid for all needful services or expenses with the money or other assets of the estate in his hands, or, if practically compelled to contract a liability about the business of his trust, he should have retained for his own reimbursement, and claimed credit on his settlement. *He alone* is primarily liable for such contracts, both in law and equity, however *bona fide* they may be, and those who deal with him must look to him personally, *in the first instance at least.* They must first sue to judgment and insolvency him with whom they directly contracted. Then, if the debt contracted be just and *bona fide*, and a legitimate expense of the estate, they may proceed in equity against the administrator *de bonis non* to subject the non-administered estate in his hands as equitable assets. In the case at bar, the complainants have no equity against the administrator *de bonis non* until they first sue James H. Haughton's estate to insolvency. Hence the present bill lacks equity as against this defendant. For the settled principles of this doctrine in every phase of fact

see the following cases, many of them exceedingly emphatic : *Sims* v. *Stilwell*, 3 How. (Miss.) 176 ; *Woods* v. *Ridley*, 27 Miss. 119 ; *Greening* v. *Sheffield*, Minor (Ala.), 276 ; *McEldery* v. *McKenzie*, 2 Porter, 33 ; *Johnson* v. *Gaines*, 8 Ala. 791 ; *Kirkman* v. *Benham*, 28 Ala. 501 ; *Jones* v. *Dawson*, 19 Ala. 672, overruling *Coopwood* v. *Wallace*, 12 Ala. 790, which see also ; *Wade* v. *Pope*, 44 Ala. 690 ; *Lyon* v. *Hays*, 30 Ala. 430 ; *Muchall* v. *Williams*, 32 Ala. 489 ; *Savage* v. *Benham*, 11 Ala. 49 ; *Kessler* v. *Hall*, 64 N. C. 60 ; *Livingston* v. *Gaussen*, 21 La. Ann. 286 ; *Worrall* v. *Harford*, 8 Ves. Jr. 4 ; Lewin on Trusts, 454, 455 ; Hill on Trustees, 567 ; 3 Wend. 244 ; 7 Cowen, 58 ; 12 Johns. 349 ; 41 N. Y. 315 ; *Austin* v. *Monroe*, 47 N. Y. 360 ; *Guerry* v. *Capers*, Bailey Eq. (S. C.) 159 ; *Sloan* v. *Johnson*, 14 S. & M. 47.

*Houston & Reynolds*, for the appellees.

The office of an administrator is that, so to speak, of a *statutory trustee*, or trustee under the statutes of the State ; and these statutes creating the office define his authority. The office of an executor *may under the will* be different, or modified as to his powers and liabilities, but there is in this case nothing to vary the rule governing both under our laws.

It is important to note that the strict rules and technical restraints applicable to trustees under the laws of England are neither a *necessary* nor a *safe* guide in settling questions arising under our statutes on this subject. Hill on Trustees (3d Am. ed.) 65, after defining in its widest meaning the term " *trustee*," as embracing executors, administrators, guardians, bailees, factors, &c., adds, " But the term ' trustee,' in its more defined acceptation, has acquired a meaning distinct from any of these characters. . . . It is not intended that those branches of the subject should be objects of discussion in the following pages, which will be confined to the law relating to trustees in the usual and more restricted meaning of the term," &c.

Among the duties imposed by our Code upon administrators and executors is, that *he shall collect debts* due the estate, both those originating out of transactions with the deceased and with the administrator. *The debts must be collected*, if practicable, with or without suit, as the case requires. The admin-

istrator or executor has no choice or discretion. Authority or power given to do any particular act necessarily carries with it *the authority and power* to employ the means to accomplish this object. If an administrator is authorized and bound to do certain things, he must be privileged to use the appropriate means for this purpose. If in the management of estates, *in the custody of the law* and in the custody of *the chancery courts*, clerks, sheriffs *and lawyers* become indispensable for the benefit of creditors, heirs and distributees, then of course *creditors*, *heirs* and *distributees* must pay for such agencies; or, rather, the court is in good faith bound to see that before the estate is distributed the services of such agents are paid for out of the fund to be distributed. The true and correct principle of justice would not only bind the estate, but also the administrator personally, for services under such circumstances, giving the creditor an election. *Short* v. *Porter*, 44 Miss. 533; *Farley* v. *Hord*, 45 Miss. 96.

CHALMERS, J., delivered the opinion of the court.

In 1865-66, Haughton and McNairy, executors of Thomas Brandon, deceased, delivered for collection to Davis & Haughton (afterwards Davis, Haughton & Gholson), attorneys-at-law, a large mass of claims against various persons, amounting in the aggregate to something more than $35,000. Upon all of them suits were instituted, which, in many instances, resulted in long and complicated litigation, involving injunctions in the chancery and appeals to the Supreme Court. A large majority of the judgments obtained proved worthless, so that, after the appropriation by the attorneys of all the money realized, there still remained due them several thousand dollars for fees. The fees charged were proved to be usual and legitimate, according to the custom and standard at the Aberdeen bar. Both of the executors having resigned and subsequently died, the appellant Clopton was, in 1869, appointed administrator *cum testamento annexo*. One of the suits only seems to have been revived and prosecuted in his name, all the others having ripened into judgments before his appointment. The claim of the attorneys for their fees remaining unpaid, this bill was filed against the administrator Clopton in his represent-

ative capacity, to compel payment out of the assets in his hands. Many questions were raised by the pleadings below and by the assignment of errors in this court; but we shall notice only the principal one, which underlies and controls all others. Can an attorney make the estate of a decedent liable for services rendered to the executor or administrator in its management?

We had occasion, in the recent case of *Fearn* v. *Mayers, ante,* 458, to declare that, while trustees have a lien on the trust estate for all costs and expenses legitimately incurred by them in its administration, this privilege does not extend to agents employed by them, but such agents must look alone to the trustee for reimbursement. It follows from this, that while the trustee who has paid or become responsible to parties legitimately employed by him in the business of the estate may retain the assets for his own reimbursement, yet if he does not do so, the parties employed by him are ordinarily powerless to assert any claim against the estate.

A careful re-examination of the subject has strengthened our conviction of the soundness of this decision, both on principle and authority. If the trust estate was liable to be attacked and impleaded by every person who had dealt with the trustee, and forced to litigate with them the nature, value and beneficial character to the estate of the services alleged by them to have been rendered, it would be involved in endless complications, and be perhaps swallowed up or seriously injured by the accumulations of costs. The law, therefore, compels such persons to look to the trustee with whom they dealt, and against whom alone they have a legal demand. If their claim is recognized or enforced against him, he presents it to the proper tribunal, and with him the beneficiaries of the estate will litigate the question of the propriety of its allowance against themselves. The authorities on this point are almost, if not altogether, uniform and harmonious. Hill on Trustees, 567 ; 2 Perry on Trusts (2d ed.), § 907 ; Lewin on Trusts, 454, 455 ; *Worrall* v. *Harford,* 8 Ves. Jr. 4 ; *Jones* v. *Dawson,* 19 Ala. 672 ; *Wade* v. *Pope,* 44 Ala. 690 ; *Mulhall* v. *Williams,* 32 Ala. 489 ; *Livingston* v. *Gaussen,* 21 La. Ann. 286 ; *Kessler* v. *Hall,* 64 N. C. 60 ; *Austin* v. *Munro,* 47 N. Y. 360 ; *Guerry*

v. *Capers*, Bailey Eq. (S. C.) 159.; *Sims* v. *Stilwell*, 3 How. (Miss.) 176; *Woods* v. *Ridley*, 27 Miss. 119.

It is evident that this principle applies with especial force to contracts entered into by executors and administrators. These functionaries have no authority to contract debts which shall primarily bind the estates committed to them, except in cases specially authorized by statute, and ordinarily such debts are obligatory only as personal obligations. This has been repeatedly held true of fees due attorneys for professional services in the management of estates, as was declared in the leading case of *Worrall* v. *Harford, ubi supra*, and in several of the other cases above cited.

It is true that, under some circumstances, attorneys or other creditors of the administrator may, under the principles of substitution and subrogation, reach the assets of the estate ; but such relief must be based on the fact that the administrator himself either already has some claim against the estate, or would be entitled to one by a payment of the demand of the creditor, and that the latter is unable to obtain satisfaction from the administrator. If, for instance, the creditor can show that the consideration of his demand inured to the benefit of the estate, and is unpaid; that the administrator is non-resident or insolvent; has never received credit for it in his settlements ; and that the estate is indebted to him, — in such case the creditor may, by a bill in chancery, have himself subrogated to the rights of the administrator against the estate, and to that extent have satisfaction of his demand out of its assets. Nor would it be necessary for him to show that the estate was actually indebted to the insolvent administrator. It would be sufficient if he could show that the estate would have been indebted if the administrator had paid the demand out of his private funds. Inasmuch as in such a case the administrator ought to have paid it, and if he had done so, would have been allowed a credit against the estate, a court of equity will consider that done which should have been done, and will give the creditor a decree against the estate, provided the administrator is not indebted to the estate, or would not thereby become so, and has not already received credit for the claim. Under such circumstances the

creditor would obtain payment only for beneficial services rendered to the estate, while it would be in no wise damaged.

The Supreme Court of South Carolina, in *Guerry* v. *Capers*, 1 Bailey Eq. 159, after laying down, in the broadest terms, the doctrine that the creditor must look alone to the administrator with whom he contracted, thus announces the principle above stated: "Whenever the trustee, if he had paid the debt out of his own funds, would be in advance to the trust estate, and would be entitled to be reimbursed out of it, his creditor may, if the trustee is insolvent, be allowed to take his place, and be paid out of the estate to the same extent. This constitutes, however, the only exception to the general rule which we are prepared to recognize." This, we think, announces the true rule, except that the court omits the contingency of the estate being already indebted to the trustee, in which event, of course, the equity would be still stronger.

This right of subrogation is not to be confounded with that intimated in *Woods* v. *Ridley*, 27 Miss. 119, and more fully exemplified in *Short* v. *Porter*, 44 Miss. 533, where parties had furnished money to the administrator, which had been applied in exoneration of the debts of the estate. In such cases the equities arise by reason of the application of the money to the discharge of the burdens resting upon the estate, and are in no manner affected by the solvency or insolvency of the administrator, or by the state of the accounts between himself and the estate. In the class of cases under consideration the creditor has no debt against the estate, nor has he discharged any. He has a personal claim against the administrator, which he will be allowed to assert against the estate under the limitations above indicated, because the estate has received the benefit of the consideration, and has not paid for it; and while it is impossible to collect it from the party primarily liable, its payment out of the assets can inflict no injustice upon the beneficiaries of the estate.

Whether under any circumstances such a proceeding can be instituted against the estate, before the administrator with whom the contract was made has been pursued to insolvency, is a mooted question. It was ruled in the affirmative in *Coopwood* v. *Wallace*, 12 Ala. 790; but this decision was overruled

in *Jones* v. *Dawson*, 19 Ala. 672, Chief Justice Dargan dissenting. The latter decision was undoubtedly correct in the principal question discussed, to wit, the non-liability of the trust estate to the claims of parties dealing with the trustee, in discussing which the court remark, " We say nothing of the right of the party, after he has exhausted his legal remedy against the trustee, to proceed in equity to subject an equitable demand which the trustee may have against the estate."

Conceding that the party has this right, as we have declared above that he has, we see no reason why he should not be allowed to assert it primarily, without being put to the necessity of a suit at law in the first instance. In such a proceeding he must assume the burden of showing the impossibility of obtaining payment from the administrator, as well as of establishing all the other facts necessary to maintain the suit. The administrator or his legal representatives should be made a defendant, as well as the existing representative of the estate proceeded against.

The bill in this case possesses none of the features deemed essential to its maintenance, and the demurrer filed to it should have been sustained.

We reverse the final decree, and also the order overruling the demurrer, and remand the cause with instructions that the demurrer be sustained, and that the complainants be allowed a suitable time to file such amended bill as they may be advised; if the same be not filed within the time granted, that the cause be dismissed without prejudice to any rights the complainants may have to proceed against the defendant personally for any services rendered under any employment by him, express or implied.