Kinkead, J.
Plaintiff seeks to recover the sum of $1,433.65, with interest at 6 per cent, from July 26, 1906, against James T. Holmes, as administrator of George L. Converse, deceased.
The petition contains two causes of action. The first upon a promissory note, and the second declares against the administrator upon a contract for the loan of money, now amounting to the sum of $1,433.65, which plaintiff avers he made on July 26, 1906, at the special instance and request of Elouise Stillman, who was then executrix of George L. Converse, upon the representation made by her that it was necessary to save the real estate of George L. Converse from becoming delinquent; that the money was so furnished by plaintiff to the executrix and by her used *194 for the payment of the taxes then clue by said executrix, and that the estate of Converse received the benefit of the money. It is then alleged that the executrix promised to repay the amount of the estate, which she did not do, and that her estate is insolvent. Plaintiff avers that claim was rejected July 23, 1908. .
Plaintiff elected to stand upon the second cause of action.
The administrator sets up the bar of the statute, Section 6097, claiming that he rejected the claim December 5, 1907, and denies that it was rejected July 23, 1908.
Second. The administrator avers that the executrix had no authority to borrow the money; that at the time of. the borrowing the money the executrix had been engaged for about nine or ten years in administering the estate; that for four or five years previous there were or had no debts unpaid; that large amounts of assets had been wasted through the negligence of the executrix.
The legal question involved is, whether the plaintiff who drew his checks, one for $778.89 and the other for $654.75 direct to the county treasurer, for the payment of the taxes due on the Converse estate property, at the special instance and request of the-' executrix, can in equity compel the estate to reimburse him.'
In determining the issues raised on the second cause of action we are not warranted in considering the fact that the executrix executed a note for this amount, but we are to consider only the fact that the plaintiff did by request of the executrix furnish this money to pay the taxes of the estate upon her promise to reimburse him, and that the estate received the benefit of the money so loaned by plaintiff.
It is one of the commonest rules of law that ordinarily “an executor or administrator, as such, has no inherent authority to borrow money, and such loans to the representative do not constitute valid claims againsUthe estate or entitle the lender to in-' terest thereon, although the representative may make himself personally liable” (18 Cyc., 251). This is a most salutory rule designed to protect estates from improper, illegal acts of such trustees. The wisdom of the. rule is well illustrated by the case of Lucht v. Behrens, 28 O. S., where the executor without authority took the personal assets of the estate and carried on the *195 former trade and business of the testator, adding to the indebtedness (or attempting to) of the estate by borrowing money.
The rule of immunity of estates was designed to prevent adding to the obligations of the estate in this manner, and the court very properly held that the estate was not liable for the money so borrowed by the executor.
“But an equity arises in behalf of the lender, where the money has in fact been applied to pay debts or otherwise so as to benefit the estate, and in such case the creditor of the executor or administrator may fairly be subrogated to the latter’s rights.” 19 Cyc., 252; Deery v. Hamilton, 41 Iowa, 17; Williamson’s Appeal, 94 Pa. St., 231; Woods v. Ridley, 27 Miss., 119; Nathan v. Lehman, 39 Ark., 256.
“Third parties have been permitted to maintain equitable actions on contracts of the administrator directly against the estate where, because of his insolvency, or some other sufficient reason, their remedy against him is inadequate. But this is always based upon a quantum meruit or benefit received.” Valley National Bank v. Crosby, 108 Iowa, 653; Deery v. Hamilton, 41 Iowa, 16; Clepton v. Gholson, 53 Miss. 466; Nathan v. Lehman, 39 Ark, 256; Mosley v. Norman, 74 Ala., 422.
In Deery v. Hamilton, 41 Iowa. 16, where such an action was sustained, the court said:
“The estate has received the benefit of the money which was advanced by the defendant. It ought in good conscience to repay it with legal interest. This is not- required because of the con-' tract under which the money was borrowed, which is invalid, but on the ground that the estate.has had the benefit of the money received from the defendant.”
In Clepton v. Gholson, 53 Miss., 466, while recognizing the invalidity of such contracts so far as the estate is concerned, still held that under some circumstances creditors of an administrator may upon principles of substitution and subrogation, reach the assets of the estate, and may proceed primarily against the estate without having sued the administrator at law, but that the creditor must show the impossibility of obtaining payment from the administrator.
In Williamson’s Appeal, 94 Pa. St., 231, money was borrowed to pay off the widow’s dower upon the express promise to sell. *196 the real estate, and repay it. Recovery against the estate was sustained.
Such creditor of the executor, where the money has in' fact been applied to pay debts or otherwise to benefit the estate, will be permitted to take the representative’s place and be subrogated to his right or reimbursement from the estate. 18 Cyc.. 253.
This' is the equitable principle which Judge Taft had in mind in Boggs v. Wann, 58 Fed., 681, when he said:
“It is possible that, in case of the insolvency of the executor, one who had rendered services or furnished property to the estate on the executor’s promise to pay might in a court of equity hold the estate, not on the contract, but to the extent of the benefit actually conferred on the estate.”
But we need not hunt precedents to lead us to do equity although one feels more comfortable to rest upon them.
Pomeroy in discussing a certain group of equitable remedies touched upon the fundamental principle which can be adopted here. The distinctive object of these remedies is to specifically enforce the complainant’s equitable right and to compel the defendant to specifically perform the actual equitable obligation resting upon him. This group contains specific performance including, among other things, suits against executors and administrators.
“Specific performance,” he states, “is often spoken of as though it was confined to the ease of executory contracts; but in reality it is constantly employed in the enforcement of rights and duties arising from relations between specific persons which do not result from contracts, as for example, creditors and executors or administrators, and the like. In these' latter cases as well as in that of the specific performance of an- executory contract the form and nature of the final relief is often the same as that of accounting, pecuniary compensation, ’ ’ etc. 5 Pomeroy Eq., 8, 9 and 11.
The taxes were a debt as well as a lien upon the lands of the estate for which they could have been sold. And may the executor not then do as Judge Wood stated that he could, “in an emergency such as this case presents, create a debt against estate, by loaning money to prevent its sacrifice.” Welsh v. Perkins, 8 Ohio, 52, 59.
*197 As Wood, J., said: “We think he may.”
With respect to the presentation of the claim to the administrator the conclusion is that the nature of the claim is such that it does not have to be presented for allowance. Therefore there is no occasion for considering the question of the statute of limitation.
Much has been said by counsel for defendant about the maladministration of the estate by the former executrix for the purpose of showing a want of equity which is chargeable against the plaintiff, and which should defeat his recovery.
This matter has received great consideration, especially because some of the decisions examined have placed the right of recovery against the estate in eases similar to this upon the doctrine of subrogation. That is, recovery has been allowed in cases where money has been loaned an administrator which has been used by him for the benefit of the estate, upon the theory that the liability was a personal liability of the administrator, and being a claim which he could assert against the estate and receive credit in his accounts, therefore the creditor, the administrator being insolvent, may be substituted in his place and recover the loan in equity against the estate.
Subrogation being a pure rule of equity, not dependent upon contract or privity, but being applied where one, not a volunteer, pays a debt or demand which in equity and good conscience should have been satisfied by another, the thought in the mind of counsel must be that the executrix having improvidently managed her trust, could not herself have received credit for this amount in her account.
This must be the logical conclusion of the claim.
If a person in the position of the plaintiff must recover by the sole route of subrogation, and if by reason of the conduct of the person to whose rights he seeks to be subrogated, there is no right to recover, then a court of equity is bound to take notice of this want of equity.
It is urged that there was no maladministration charge in the cases cited by plaintiff; a personal examination of them in this opinion shows that to be true.
It is argued further that to ratify such borrowing would be to take from three innocent Converse children—two of them still *198 minors—property to pay an alleged liability originating in the wrong of the executrix and at the time of its origin legally known to the plaintiff. This would be inequity, not equity, it is said.
Pursuing this claim in an effort to discover the real equity in this case, we may concede that a large amount of the proceeds of this estate has been used, and is unaccounted for. At the time these taxes, which were a lien, Avere paid by plaintiff by his personal check to the treasurer, there was no money of the estate with AAdiich to pay them, because of the improvidence 'of the executrix to whom so much power had been granted without bond. For the sake of demonstration concede this to be the case. If that be true, and the treasury of the estate was depleted even by the misconduct of the executrix, there Avas surely urgent need for a loan of money to dischage the lien of the taxes, and to save the penalty and prevent a sale, for the benefit of whom? For the benefit of the minor children, for the benefit of the estate. ■
To do equity in this ease the court is not bound to take the circuitous route of subrogation through the éxecutrix, stumbling over the general charge of maladministration, supported by general claims, and not by accurate detailed accounts sufficient to enable us to arrive at any definite satisfactory conclusion.
To do equity Ave need go no farther than to find that plaintiff discharged the lien of these taxes at the special instance and request of the one Avhose duty it was to pay them, upon her promise to pay them. This was of benefit to the estate, to the persons to whom the land passed under the Avill—the children—whose representatives are bound in equity to see that the one who preserved their rights in a time of need, without regard to the cause thereof, should be reimbursed out of the property Avhich he protected for them.
The benefit derived by the estate, and the devisees, gives rise to the equity AAdiich supports this action.
,• .Recoveries like this have been placed upon the mere benefit as much as upon the doctrine of subrogation. .
If we want to adopt the doctrine of subrogation in solving the problems in this case, Ave may as well say that the plaintiff may be subrogated to the lien of the taxes, paid by him at the request of the duly authorized representative of the estate. That was a claim which would;-had to have been paid for the’preservation of *199 this estate to the minor devisees, even if the executrix had been guilty of maladministration a thousand times over.
Considering this claim of defendant in the light of the evidence, the will, and the nature of the obligation, the finding must be against the defendant.
There does not seem to be any merit in the claim that the loan Avas made eight or nine years after the testator’s death in an effort to shoAV that it was a transaction substantially between plaintiff and executrix.
But the AA'ill committed the absolute control of the estate to the executrix without bond, authorizing her to sell at private sale such part of his real estate as she deemed necessary. And this broad power was no doubt the cause of the long delay in the administration of the estate. '
Then, too, the fact that it was devised to the Avife and her children together Avith this absolute power of sale AADuld tend to retard the closing of the administration.
Judgment may be aAt^arded for the plaintiff according to the prayer of his petition.