MARY C. FEARN *v.* A. G. MAYERS, TRUSTEE, ET AL.

1. TRUST ESTATE. *Loan to grantor. No lien. Case in judgment.*
   B. gave a deed of trust on certain lands to H. and T. B., as trustees, to pay debts due third parties. The trustees employed F., as agent, to manage the trust estate. F., in order to pay for and acquire B.'s residuary interest in the trust property, allowed him the services of some negroes for several years. B. neither conveyed his residuary interest to F., nor paid the hire of the slaves. F., by bill in chancery, sought to subject the trust estate to a lien for payment of the hire of his negroes. *Held*, that F. had no such lien.

2. SAME. *Trustees. Agents. Expenses and costs. Lien.*
   Trustees have a lien on the trust fund for costs and expenses incurred in its administration ; but agents employed by them must look alone to

the trustees for payment of their services and expenses in the management of the trust estate.

3. SAME. *Agent. Express authority. Lien.*

In a trust deed the trustees were specially empowered to employ agents, who might do any thing which the trustees could do in execution of the trust, and the expense of administering it was expressly charged upon the trust estate. The agent employed by the trustees claimed that, under the express stipulations in the deed of trust, he was entitled to charge the trust estate with payment of his services and expenses in managing the same. *Held,* that the trustees had the power to employ agents, if the business of the trust demanded it, without any express authorization; and that the agent had no more right to charge upon the trust estate the payment of his services and expenses, with the express stipulations, than without them.

APPEAL from the Chancery Court of Hinds County.

Hon. H. R. WARE, Chancellor.

In this suit a bill was filed to subject certain lands held in trust to the payment of services rendered by an agent employed by the trustees to take care of and manage the trust estate. A demurrer was filed to the bill, which was overruled, and the defendants were required to plead; and an order of reference to a commissioner was made, to have an account stated between the trustees and their agent. But the Chancellor, who overruled the demurrer, went out of office; and the new Chancellor, upon final hearing, dismissed the bill, for want of jurisdiction of the matters and things therein set forth. The complainant appealed to this court, and assigned for error the action of the Chancery Court in dismissing the bill. Several other errors were assigned, but not passed upon by this court. The other facts of the case appear fully in the opinion of the court.

*Potter & Green,* for the appellant.

By reference to *Jones* v. *Dawson,* 19 Ala. 672, it will be seen on what ground it is held that the employé of a trustee cannot sue the trust estate, but is only a creditor of the trustee. The reason given is, that if the employés could sue the estate, it would require in every case " an account " between the estate and the trustee, to the great cost of the estate. It is admitted that, if the trustee pays such a claim, he is entitled to credit against the estate for the payment, in the settlement of his accounts; and the obvious reason why it is held that such

employé cannot pass by the trustee and sue the estate is, that the estate is not directly bound for the claim, and can be subjected to pay it only in the event that on a settlement of the accounts of the trustee the estate is found indebted to him in an amount equal to such claim. On no other theory could such an account be held necessary to be taken in each case, if such suits were allowed. The decision proceeds upon the assumption that the estate is not bound for the wages of persons employed by the trustee, and that he alone is liable to pay them ; and if he becomes insolvent and never pays, such persons are without remedy.

1. But it is manifest that no such reasons apply to cases where the trust deed expressly charges the trust estate with the payment of all expenses, and thus creates a lien on the estate for payment of them. The universal rule is that the holder of a claim that is a lien on an estate may enforce payment and subject the estate by a direct suit for payment. Any lien may be enforced by suit.

2. It is no answer to say that the law implies a lien in favor of the trustee for expenditures made by him, but implies no lien in favor of the persons employed by the trustee, for the deed here expressly creates the lien. It authorizes the appointment of an agent, who, of course, must be paid, and pledges the trust estate for all expenses. Moreover, if such a lien is implied in favor of the trustee, why should it not be implied in favor of an agent appointed, as here, under express authority of the trust deed, and invested with equal power with the trustees ? This case is unlike those relied on by counsel, but is very like a case where it was expressly decided that the agent employed by the trustees could file a bill like this, and subject the trust estate to pay his demand. *Noyes* v. *Blakeman*, 6 N. Y. 567. The cases relied on by the defendant admit that, if the trustees had paid this demand, they might have sued the trust estate to reimburse themselves. *Their* lien for such payments is admitted. It is also true that Fearn performed valuable services for the benefit of the estate, and advanced large sums of his own money for its benefit. Now, one of two things is true, viz., either the estate is liable for such services and expenditures, and if so liable, this suit may be maintained

and the estate subjected to pay the demands ; or the trustees became personally liable to pay it, and they thus became liable for the benefit of the estate, and the estate has been thus very greatly benefited.   All agree that if the trustees had *paid*, their right to reimbursement out of the estate would be perfect ; but the law goes further, and in many cases holds a *liability incurred* to be equivalent, as against certain third parties, to a *payment.*   Thus, if a surety or guarantor *extinguishes* the debt for which he is bound, by giving his own note in absolute payment, he may sue and have reimbursement from his principal, precisely as if he had paid his money, instead of his own note, to satisfy the original demand.   In such a case it is immaterial whether such new note is ever paid or not.   It suffices that the surety, or guarantor, has incurred *a liability* to pay it, and has thus extinguished the original debt. So here, if the trustees only were liable to Fearn, they by *contracting* with him and becoming liable to him for his services, &c., secured large and valuable benefits to the trust estate, and in so doing acted within their powers.   The trust estate has derived the benefit as fully and to the same extent as if the trustees had paid their money to Fearn in payment of his account.   On this supposition, that they became liable to Fearn, they incurred a liability to Fearn, and were bound to pay him, and they thus secured those benefits, services and advances for the benefit of the estate ; and, so far as the estate is concerned, the legal result is precisely the same as if they had *paid* Fearn, and their right to reimbursement from the trust estate became complete as soon as they thus incurred such liability ; and in such a case this question arises, May not *their* right to be paid for a liability incurred by them for the benefit of the estate be made available to the complainant under the special circumstances of this case ?   If the trustees incurred a personal *liability* for the benefit of the estate, their claim would be good whether they paid or not ; for the debt would bind them, precisely as when a surety on a note takes up the note by giving his own note in payment.   In such a case the surety may claim, as for a payment, and recover against his principal.   If the trustees were *liable* to Fearn, and he had no claim against the estate, then the trustees would clearly be entitled to be

protected and made good by the estate. The facts in the case, as before stated, are that the trustees had full power to appoint an agent, and they appointed Fearn. The trust deed declares that such agent might be appointed to " do any thing which they [the trustees] could do in carrying into execution the trusts hereof." In other words, the agent might, like the trustees, transact all trust business, incur expenses, &c., pay his own moneys, for trust benefit, for taxes, costs, &c., in the course of his agency. Now if, as counsel admits, *the trustees* would have a lien on the trust estate for such payments made by them, why shall not the agent have like benefit of lien? He holds and acts under *the same deed*, and has full power, like the trustees, and is justly entitled to like protection for all his just charges and his expenditures of time and money for the benefit of the trust. Under the terms of the deed, Fearn, though appointed by the trustees, was the agent of the grantors as well as the grantees.

*Harris & George*, for the appellees.

1. The only ground for jurisdiction of the subject-matter of this case is the alleged lien. The law on this point is well established. The trustee has a lien for the expenses of the trust, and this whether the expenses are expressly charged on the trust fund or not. The law charges the trust with the expense of execution in *favor* of the *trustee*, but for good reasons those whom a trustee *employs as agents* or *servants* have no lien. They must proceed against the trustee employing them. The doctrine is fully stated in *Jones* v. *Dawson*, 19 Ala. 675. There an *agent* of a *trustee* filed a bill to subject the *corpus* of the trust property to the payment of his account for services about the trust property; and it was held that he had no lien, and his bill was dismissed. There the trustee was insolvent, and the court, after a full examination, decided he had no lien. This deed was made there, and the law of that State should control its construction and effect. This case is supported by all the text-writers on trusts. Perry, the latest writer, 2 Perry on Trusts (2d ed.), § 907, citing numerous cases; Lewin on Trusts, 465; Hill on Trustees, 567. The only exception to the rule is where the grantor in the deed or the testator in a will directs the trustee to *appoint* a *particular*

person by name to a particular employment; and the reason of the exception is that, by naming the particular person, the grantor or testator means to confer a *benefit* on the particular person in the shape of compensation for employment, and such person is considered as the recipient of a benefit under the trust, and is put on the footing of other beneficiaries. *Williams* v. *Corbet*, 8 Simons, 349; 2 Perry on Trusts, § 907. It is not permitted to the trustees to create a multitude of liens and charges on the estate by his contract with agents. The beneficiaries cannot call the agent to account. The trustee alone can deal with him. The trustee, like an administrator, pays the agents he employs, and gets allowance for such payments in settling his account. 2 Perry on Trusts, § 912. Hill on Trustees, 810, 811. It does not matter that the deed charges expenses on the trust fund, or authorizes agents to be appointed. The law charges the expenses on the trust, and gives the right to employ agents, though the deed be silent. On this all the authorities agree. The rule applies to all cases of trusts, — to receivers, executors, trustees. All these have the same power; but none of them can give to agents a lien. They cannot involve or incumber the trust property by a multitude of claims.

2. The claim of a lien for hires of the " Shirley " slaves is preposterous. The special contract as to desperate claims provided for compensation in a share of the thing recovered. When the negroes were purchased, Fearn was the owner of a half interest in them. How is it possible to create a lien in his favor for the hire of his own property ? To escape this absurdity, it is pretended that the hires went into the trust fund. This is a mistake, *no hires were paid:* four of the grantors bought out the interest of the fifth, an equity of redemption, just as if the fifth heir had sold out his interest in the estate to four co-heirs. The estate was not increased nor benefited. The creditors' fund remained the same, — neither increased nor diminished. There was no *contract* for a *lien*, and the law gave none. The transaction was independent of the trust between the grantors, and Fearn's claim for negro hire is a purely legal demand without equity.

CHALMERS, J., delivered the opinion of the court.

In 1842, William P. Bibb, David P. Bibb, Robert T. Bibb, and Archibald E. Mills conveyed in trust to Thomas Bibb and A. M. Hopkins a large amount of real and personal property, situated in the States of Alabama, Mississippi, and Louisiana, for the purpose of liquidating certain liabilities therein specified. When these debts had been extinguished, the surplus property remaining was to be reconveyed to the grantors, or sold for division of the proceeds among them, as might then be deemed advisable.

Under a special authorization contained in the conveyance, the trustees appointed George Fearn their agent to look after and manage so much of the property as was situated in Mississippi, at a stipulated salary. There was a full settlement between Fearn and the trustees in 1859, by which a small balance was found due him; and after that period very little was done in furtherance of the trust, the debts intended to be secured by it having been mostly liquidated. Fearn, however, remained in charge of the Mississippi property, giving it needful attention, until 1868, when he was adjudged a bankrupt. At the sale of his effects by his assignee, the complainant Mary C. Fearn became the purchaser of his claim against the trustees, for salary and moneys expended in his agency. The original trustees having died, and the appellee Mayers having been appointed in their stead, by the Chancery Court of Alabama, in which State the parties in interest principally resided, Mary C. Fearn filed this bill against said new trustee, and against the children and representatives of the original grantors in the trust deed, for the purpose of subjecting the *corpus* of the trust property, situate in this State, to the satisfaction of the amount due to her as assignee of George Fearn.

We think that the amount due on the claim was equitably and justly settled by the report of Oliver Clifton, commissioner. But in this amount is embraced the hires of the negroes recovered by Fearn from Shirley. These negroes (or one-half of them) belonged to Fearn, under the special contract made between himself and the trustees in relation to the claim against Shirley. After they had been recovered and reduced

to possession, Fearn allowed the trustees to place his portion of them, as well as those belonging to the estate, in the hands of one of the Bibbs, for a series of years, without hires, for the purpose of extinguishing thereby Bibb's residuary interest in the property, after the payment of the debts. In other words; Fearn allowed the trustees to use the services of his negroes in order to buy out the residuary interest in the fund of one of the original grantors. It is impossible to see how Fearn could thereby obtain any claim or lien upon the trust estate for the payment of the hires of the negroes. If, after receiving payment in full of his claim for salary in 1859, he had loaned back the money to the trustees for the purpose of buying out the residuary interest of one of the grantors, he would have acquired thereby no lien on the trust estate, any more than a stranger would have done by making such a loan.

His claim for hire for his negroes stands upon no better footing. If we strike from the commissioner's report the claim for negro-hire and the accumulations of interest thereon, it leaves only a few hundred dollars due, — hardly more than enough to defray the expenses of this litigation.

Can a lien for this amount be asserted against the body of the trust estate?

It seems well settled, that while trustees have a lien on the trust fund for all costs and expenses legitimately incurred by them in its administration, this privilege does not extend to agents employed by them, but such agents must look alone to the trustees for reimbursement. Hill on Trustees, 567; 2 Perry on Trusts (2d ed.), § 907; *Jones* v. *Dawson,* 19 Ala. 672. This principle is not disputed by the complainant as a general proposition, but it is insisted that a different rule must prevail here, because by the instrument creating the fund the expenses of administering it were expressly made chargeable upon the estate, and the trustees were given authority to appoint agents, who might "do any thing which the said grantees [trustees] could do in execution of the trusts of said deed."

It is sufficient to remark that, without any stipulation to that effect, the expenses of administering a trust are always chargeable upon the trust fund, and that every appointment of

a trustee or agent to transact an extended and complicated business carries with it the power to employ suitable sub-agents; so that the enumeration of these things in the conveyance in this instance was unnecessary. But yet it was in this very class of cases, where the imposition upon the estate of the expenses properly incurred by the trustee, and his power to employ agents or attorneys, were unquestioned, that the rule denying to such employés a lien on the estate was established. In none of them was any question raised as to his power of employing such agents, or as to the liability of the estate for the cost of administering the trust. It is impossible to see, therefore, how the insertion of the provisions in question can change the rule of law, in the absence of an express declaration in the instrument that the estate shall be liable for all costs and charges incurred by or owing to the sub-agents of the trustees.

The case of *Noyes* v. *Blakeman,* 6 N. Y. 567, seems not to be in accordance with the views here announced. It was decided by a divided court in a case where an opposite view would have worked very great injustice, and was perhaps rested in some measure on the New York statute in reference to trust estates, which is wholly unlike ours. The decision seems exceptional, and no authority is cited in support of it.

The complainant in the case at bar, having no lien upon the trust estate, is without standing in a court of chancery. The action of the court below in dismissing the bill is affirmed.