## STERN BROS. *v.* W. N. HAMPTON ET AL.

1. EQUITY.  *Creditor of trustee.  Subrogation.  Liability of trust estate.*

   A creditor to whom a trustee has become liable for a debt authorized by the trust cannot, if the trustee is solvent and a resident of this state, rely upon the principle that, in respect to such debts, creditors are entitled to be subrogated to the right of the trustee to recover a debt out of the estate, where the estate has become indebted to him by reason of his having paid the debt, or would become so should he pay it.

2. WILLS.  *Cnostruction.  Estate during life or widowhood.  Testamentary trusts and conditions.  Alienation of trust estate.*

   A will vested in the widow of the testator an estate in his lands and other property during her life or widowhood, in trust for herself and children, and directed, by one item, an appropriation by her of the income to the support, education and maintenance of herself and children.  It further directed, by another item, that the devised property should be divided among the widow and children according to the statutes of descent and distribution in the following manner: That as the children severally attained their majority or married each should receive one-half of his or her distributive share, and the other half when it became reasonably certain that there would be no litigation against the estate, and that, in the event of the death or remarriage of the widow, the residue not already distributed should be divided among the legatees who had not received their interest.  In such case the will vests the entire equitable estate in the widow and children, and if it contains no provision against alienation or anticipation or for a forfeiture, the quitclaim deed of the children to the widow, and her subsequent mortgage of the property, both executed after all the children had attained their majority and the lapse of nearly twenty years from the death of the testator, are valid, and will not be set aside at the instance of a creditor of the widow whose judgment against her for a debt authorized by the trust was not a lien when said conveyances were executed.

FROM the chancery court of Monroe county.

HON. W. H. CLIFTON, Special Chancellor, by agreement.

The bill of complaint filed by Stern Bros., avers that W. M. Hampton owned certain lands in Monroe county at the time of his death, in 1873, which, by his last will and testament, were disposed of as follows: "Item 2—I give and bequeath to my beloved wife, Unity N. Hampton, in trust for herself and her five children [naming them] all my property, real and personal, during her life or widowhood, the rents and profits of which to be appropriated by her for the support, education and maintenance of herself and her said children, or so much thereof as may be necessary for that purpose; and, if there be a surplus, it shall be kept at interest.     Item 3—It is my will and desire that my property bequeathed in item two shall be divided amongst my wife and children, according to the rule established by the statutes now in force in this state regulating the descent and distribution of real and personal property, and the division to take place as hereinafter mentioned and provided, to wit:  As each of my said children shall arrive at the age of twenty-one years, or marry, one-half of his or her distributive interest shall be paid over to him or her, and the other half as soon thereafter as it shall be ascertained that there is no reasonable probability of any litigation against my estate; and, upon the happening of the contingency or contingencies mentioned in item two, that is to say, upon the marriage or death of my said wife, then the residue of my estate, not already distributed, shall be divided among the legatees who have not already received their interest."

It is averred further, that in the years 1886 to 1891, inclusive, complainants, then merchants in said county, furnished to the said widow money and merchandise necessary and suitable for the support, education and maintenance of the children, and for the support and maintenance of the widow, purchased or borrowed, and used for that purpose, amounting in all to $324.91, for which the widow gave her three notes, two of which were signed by her as executrix and one individually, on which notes complainants recovered judgment in the circuit

court of the county against the widow individually, on October 29, 1891, for $413.71; that there has never been any division of the testator's estate, and the widow still remains unmarried; but that on June 26, 1890, the said five children made a voluntary deed of quitclaim of said lands to the said widow, who, shortly thereafter, on September 1, 1890, gave two trust deeds on said lands to the Lombard-Investment Co., to secure two debts for borrowed money aggregating $1,425.

It is charged that, under the will, the legal title, coupled with an active trust, was vested in the widow and still remained in her; that the said trust deeds were void, or at least subordinate to the trusts created by the will, upon the faith of which complainants furnished said necessaries to said trustee and beneficiaries, which was contained in a public record and affected all parties with notice of the nature thereof, and that said quitclaim deed from the children to their mother was voluntary and without consideration; that complainants' debt having been incurred and used for trust purposes, they were entitled to have the income of the estate applied, at least *pro tanto*, to its payment, the same having been ascertained and liquidated by judgment, and that, to such extent, they were equitably beneficiaries of the trust created by item two of the will.

The complainants prayed for the cancellation of the two trust deeds given to the Lombard Investment Co., or that the same be subordinated to their prior claim under the will; that their debt be paid out of the income of the estate; that a receiver be appointed, etc. The Alliance Trust Co. having purchased the land at foreclosure made by a substituted trustee, under the deeds of trust executed by the widow, that concern and the substituted trustee were made parties defendant along with the widow and children, the Lombard Investment Co. and the original trustee, defendants to the original bill, the same relief being asked as to them, etc.

The Lombard Investment Co., the original trustee, the Alliance Trust Co. and the substituted trustee demurred to the bill

on numerous grounds, the nature of which are disclosed by the questions discussed in the opinion. From a decree sustaining the demurrer and dismissing the bill, this appeal was prosecuted.

*E. H. Bristow*, for the appellant.

1. The complainants having, at the widow's request, furnished necessaries for the support and maintenance of herself and children, that were used as well as furnished for that purpose, they are entitled in equity to be subrogated to the rights of the widow, as trustee, and to reimbursement out of the estate or the income thereof. *Woods* v. *Ridley*, 27 Miss., 119; *Farley* v. *Hord*, 45 Miss., 96. The fact that complainant's judgment is against the trustee individually does not prejudice their right, the debt being one authorized by the trust. *Clopton* v. *Matheny*, 48 Miss., 285.

2. The trust in this case being an active one, and not a mere legal title with a passive trust, such as would be executed *ipso facto* by the statute of uses (27 Hen. VIII., ch. 10), but a legal title in trust to perform, with that legal title, fiduciary duties in and about the estate, that statute has no application. *Leigh* v. *Harrison*, 69 Miss., 923. Under the will, the widow is required to appropriate the income of the estate to the support, education and maintenance of herself and children, and keep any surplus at interest; and the duration of the estate is for her life or during widowhood. As long therefore as she lives and remains unmarried, this active trust endures. If item two were the only clause of the will, the trust would still be an active one; the only estate devised would be an estate for life or widowhood, and the decedent would be intestate as to the reversion after the death or marriage of the widow. If it were death, the children would then inherit an undivided one-fifth each in both land and personalty; if it were the marriage of the widow, she would take her dower (under the law as it stood at the death of the testator in 1873), viz.: one-third of

all the lands for life and one-sixth of the personalty, and the children would then inherit a one-fifth interest each in the rest of the land and one-fifth interest in the reversion at the widow's death, and one-sixth each in the personalty. It is plain, therefore, that under this item of the will no one of the children would own or could claim any part of the testator's estate, except the right to a support and education out of the income, and no one of the children or the widow could alienate or incumber any part of the estate, or any undivided interest therein, except his or her own undivided interest in the reversion after the death or marriage of the widow, and even that reversion would be subject to the widow's dower rights.

3. Item three of the will provides, among other things, that as each child comes of age or marries, there shall be paid to him or her one-half of his or her " distributive " share or " interest," and the other half as soon as it shall be found that there is no probability of litigation against the estate; and, then, on the death or marriage of the widow, as provided in item two, the residue of the estate shall be divided, etc. Now, if this provision about the child being " paid " his or her " distributive interest " at coming of age or marriage, means that a division shall then be made of all the estate, item two, vesting an estate in the widow during life or widowhood, would be defeated. During that period she cannot have her dower allotted, the lands cannot be partitioned nor the personalty divided; in other words, her legal title cannot be disturbed during her life or widowhood. So here are apparently contradictory provisions of the will that ought to be made to harmonize if possible. 1 Jarman on Wills, 393; 2 *Ib.*, 525 (rule 7); *Homer* v. *Shelton*, 2 Metc., 200, 202; *Jackson* v. *Bull*, 10 Johns., 19. " Item three " cannot possibly stand by itself by any kind of reasonable construction. It would leave the decedent intestate as to all his estate until his youngest child came of age or married. It would be creating a remainder without any particular estate to support it, which, though

sometimes allowable in executory devises, is so very uncommon as to be almost unknown.    Evidently, the general intent of the testator was, that the widow should hold the legal title to the entire estate during her life or widowhood, devoting the income to the support, etc., of herself and children, and, at her death or marriage, then the estate should be divided according to the law of descent.    Everything else in the whole document is with reference to methods of administration, and not to the estates given by the will.    It is not possible to carry out this intention by a construction of the merely administrative clauses of item three, which would necessitate the allotment of dower and the partition of the land among the children when the first child came of age or married, thus utterly destroying the trust as far as the widow and other four children are concerned.

There is but one way to reconcile the apparently conflicting provisions of items two and three, and that is by accepting the term "distributive interest," used in the latter item, as denoting what it usually imports—an interest in personalty (*i. e.*, rents and profits)—especially as the requirement is that the distributive interest shall be "paid over" to the child, the term "paid over" having no reference to changes in the possession or ownership of lands as ordinarily used.    If this reasonable construction is given to the words mentioned, it would follow that, under item three, as each child came of age or married, he or she would receive one-half of his or her distributive share of the income to expend for himself or herself, and as soon as the prospect of litigation ceased to be reasonable, he or she should have the rest of the share in the income.    The provision for the investment of the surplus income shows that a surplus was contemplated, and the provision for possible litigation was the accumulation of the income, for the lands would be liable for such claims even in the hands of the children or widow, and if it had been intended to reserve the corpus of the estate against future litigation, such provision would be useless,

for the law reserves that of itself. This provision being made for future litigation against the estate out of the accumulation of income, then comes the final provision for division of the entire estate on the death or marriage of the widow, upon the happening of which event, and not until then, would the trust cease and the legal title be divested out of the widow, as trustee, and the estate be so divided as to warrant the execution of the conveyances assailed by the bill.

4. No division of the estate or allotment of shares has ever been made, and the legal title has all the while remained in the unmarried widow impressed with the trust created by item two of the will, and the attempts of the children and widow to alienate and incumber the corpus of the estate were ineffectual and void. *Hagan* v. *Barksdale*, 44 Miss., 186; *Ward* v. *Harrington*, 29 Miss., 238; *Leigh* v. *Harrison*, 69 Miss., 923; *Hardee* v. *Cheatham*, 52 Miss., 41.

*Gilleylen & Leftwich*, for the appellees.

1. The trust created in Mrs. Hampton by her husband's will is an executed, as distinguished from an executory, trust, for the destination of the estate is clearly pointed out by the instrument itself. Hill on Trustees (4th Am. ed.), 328; Perry on Trusts, § 359; 27 Am. & Eng. Enc. L., p. 11. It is, further, an active trust as contradistinguished from a dry or passive one, for it is a trust coupled with an interest. *Leigh* v. *Harrison*, 69 Miss., 923.

2. No other persons were interested in the land save the widow and her children, and, when the children conveyed to the widow, the beneficial and trust estates met in the same person, and there occurred a merger. Perry on Trusts, §§ 13, 334, 347; *Healey* v. *Alston*, 25 Miss., 190; *Lewis* v. *Starke*, 10 Smed. & M., 128; *Brown* v. *Bartee*, *Ib.*, 268; *People* v. *Stockbrokers' Bldg. Co.*, 49 Hun, 349; note to *Tyler* v. *Herring*, 67 Miss., 169, as annotated in 19 Am. St. Rep., 270, 271; 27 Am. & Eng. Enc. L., p. 215.

3. Trust estates descend and are conveyed just as legal estates are. The only difference is that purchasers with notice take the estate charged with the trust. Perry on Trusts, §§ 534, 535. If purchasers have no notice of the trust, they get a perfect legal title. The statement of these elementary principles · makes it clear that Mrs. Hampton conveyed away the legal title to Dun, trustee for the Lombard Investment Co. Through the sale by the substituted trustee, the Alliance Trust Co. became the owner.

4. If the quitclaim deed and trust deed assailed by the bill constituted a breach of trust, only the beneficiaries of the trust could complain. Complainants, as simple contract creditors of the widow, have no such right. *Tatum* v. *McClellan*, 50 Miss., 1; *Scott* v. *Freeland*, 7 Smed. & M., 409; *Wilson* v. *Troup*, 14 Am. Dec., 458; *VanDyke* v. *Johns*, 12 Am. Dec., 76, and notes; *Bank* v. *Railroad Co.*, 74 Am. Dec., 302; *Chorpennings' Appeal*, 72 Am. Dec., 789; *Worthy* v. *Johnson*, 52 Am. Dec., 399; 27 Am. & Eng. Enc. L., p. 206, and cases cited.

5. The debt of complainants is due by Mrs. Hampton individually. Although, in signing some of the notes, she used the affix "executrix," it was only *descriptio personæ.* The judgment is a personal one against her, and does not bind the estate. *Sims* v. *Stillwell*, 3 How., 176; *Woods* v. *Ridley*, 27 Miss., 119; *Ward* v. *Harrington*, 29 *Ib.*, 246; *Hogan* v. *Barksdale*, 44 *Ib.*, 186; *Hardee* v. *Cheatham*, 52 *Ib.*, 41; *Clopton* v. *Gholson*, 53 *Ib.*, 466; *Fearn* v. *Mayers*, 53 *Ib.*, 458; 7 Am. & Eng. Enc. L., p. 337.

6. The estate cannot be charged with debts created by the executrix for the cultivation of the crops or support of the minor children. *Farley* v. *Hood*, 45 Miss., 96. There can be no anticipation, as is here attempted, in any case. The executrix must be restricted to the specific fund. Authorities last above cited and *Emanuel* v. *Norcum*, 7 How., 150.

7. The will provides for the partial distribution of the estate

to respective beneficiaries as they become of age, which has not been done.   The failure to do this was a merely formal matter of administration that in nowise warrants the intermeddling of strangers.   *Tyler* v. *Herring*, 19 Am. St. Rep., 289, note.   A distribution among heirs when there are no debts is legal, and the administrator can be compelled to carry out an agreement therefor.   *Henderson* v. *Clark*, 27 Miss., 436; *Hargraves* v. *Thompson*, 31 *Ib.*, 211.

8.  Contracts for supplies or necessaries by guardians as such, or by executors as such, do not bind the estates under their charge.   Such obligations are purely personal.   *Dalton* v. *Jones*, 51 Miss., 585; *Clopton* v. *Gholson*, 53 *Ib.*, 466; *Hines* v. *Potts*, 56 *Ib.*, 349.

WHITFIELD, J., delivered the opinion of the court.

The debt incurred by the executrix and trustee to appellants was her individual liability in its origin.   The estate was not the debtor of appellants.   No judgment lien was acquired against the trustee, individually even, until after the children (all then of age) had quitclaimed to the trustee, and she had mortgaged the estate to the Lombard Investment Company. The equity which the creditor of the trustee of an estate has (where the debt incurred is, as here, one authorized by the instrument creating the trust) is that he is substituted to the right of the trustee to recover the debt out of the trust estate, where the estate is indebted to the trustee, if the trustee has paid it, or would be so indebted should the trustee pay it, and such trustee is insolvent or nonresident.   To prevent a failure of justice in such state of case, "the rule of policy yields to the higher considerations of justice and equity, and the creditor may be substituted to the exact position which the trustee would occupy if he had paid or should pay the demand and seek reimbursement out of the estate."   This is the principle of *Clopton* v. *Gholson*, 53 Miss., 466; *Norton* v. *Phelps*, 54 Miss., 467; and *Woods* v. *Ridley*, 27 Miss., 119.

But the bill is not framed in this aspect.    It does not allege that the trustee is insolvent or nonresident.    On the contrary, its chief ground for relief is that, under the terms of the will, neither the children nor the trustee had any authority to make the conveyances by them executed, and they are all null and void, and that the trustee is still clothed with the legal title, and she and the other beneficiaries with the equitable title to the estate, and that the trustee is hence not insolvent.

So, also, no relief can be administered on the ground that the quitclaim deeds from the children to the trustee were voluntary and without consideration.    A debtor cannot make a valid voluntary conveyance unless he leaves out of such conveyance property accessible to execution amply sufficient, in the ordinary course of events, to satisfy his then existing legal liabilities.    But the children were not the debtors of appellants. Their mother (the trustee) was appellant's debtor.

The chief reliance of appellants is the proposition that the widow took, under the will, an estate for her life or widowhood; that she was required, as trustee, to collect the income and apply it to the support and maintenance of herself and children during her life or widowhood; that the trust was thus an active one; that hence, "until the death or marriage of the widow, no one of the children would own, or could claim, any part of the testator's estate, except the right to a support and education out of the rents and profits, and that no one of the children, nor the widow, could sell, alienate or convey or incumber any part of the estate, or any undivided interest in the same, except his or her individual interest in the reversion after the death or marriage of the widow," and that since the bill alleges, and the demurrer admits, that there has been "no division of the estate nor allotment of shares," the legal title has always remained in the widow, impressed with the trust declared in item two of the will, and that "neither the children nor the widow, nor both together, could by any kind of conveyance, absolute or conditional, in mortgage or trust, divest

the legal or beneficial title out of the trustee or *cestuis que trustent.*"

We cannot concur in this view. There is no provision in this will against alienation or anticipation, nor for forfeiture. The whole equitable interest is vested in the children and the widow. No one else has any interest therein. There is no devise over, and hence we are unable to see why the children could not convey their equitable interest to the mother, and why she could not then validly make the mortgage to the Lombard Investment Co. The case does not fall within the principle of spendthrift trusts. *Leigh* v. *Harrison*, 69 Miss., 923; *Nichols* v. *Eaton*, 91 U. S., 716; *Pope's Ex'rs.* v. *Elliott*, 8 B. Mon., 56. The beneficiaries here have what Mr. Justice Miller, in *Nichols* v. *Eaton, supra*, calls " substantial rights, which the appropriate court would enforce " in their favor on their demand. Says Mr. Gray, in his invaluable work on Restraints on the Alienation of Property, § 116: "Although trustees have a discretion as to the time, mode or amounts in which a trust fund is to be applied for the *cestui qui trust*, yet, if no one else has any interest in the fund, it can be taken for his debts." And so it could be voluntarily aliened. See Gray on Restr. on Alien. of Prop., §§ 114, 116, 167, 250, and the authorities cited; Perry on Trusts, § 386.

It must be noted, too, that the children were all of age when they quitclaimed to their mother, and did so after the accrual of the period when each one was to have paid over to him or her one-half of his or her distributive share, and at a time (nearly twenty years subsequent to the testator's death) when there could scarcely be any longer " any reasonable probability of litigation against his estate."

Since the whole equitable interest was in the widow and the children, and no one else was interested, and there are no provisions against alienation or anticipation (which provisions, according to the weight of authority, whether applied to a fee or life estate, legal or equitable, are void, save in the case of

spendthrift trusts and equitable life estates of married women. Gray's Restraints on Alienation of Property, p. 193*c*), and the judgment in favor of appellants was not rendered till after the execution of the mortgage or trust deed to the Lombard Investment Company, we are of opinion that this contention of appellants is untenable.     The demurrer was properly sustained.

*Affirmed.*