STEWART *v.* HARRISON.

Division A. Feb. 5, 1951.

No. 37758 (50 So. (2d) 624)

**Ernest Kellner**, for appellant.

**Allen & Allen**, for appellee.

**Kyle, J.**

This is a suit filed in the chancery court of Sharkey County by W. L. Harrison, complainant, against W. Herbert Stewart, trustee, et al., defendants, in which the

complainant seeks to recover the sum of $15,000 as commissions for services rendered by him as a real estate agent under an oral agreement alleged to have been made with him by the defendant W. Herbert Stewart, Trustee, for the sale of approximately 16,000 acres of land in Sharkey County, Mississippi, belonging to the estate of Frank B. Houston, deceased. The defendant W. Herbert Stewart, Trustee, being a nonresident of the State of Mississippi, the suit was begun by the issuance of an attachment writ which was levied upon the land.

The facts, as disclosed by the record, are substantially as follows:

Frank B. Houston, who appears to have been a native of the State of Iowa and at the time of his death a resident of the City of Chicago, Illinois, died January 3, 1925. At the time of his death he was the owner of large tracts of land in Washington County, Mississippi, and Sharkey County, Mississippi, in addition to other properties located in the State of Illinois and elsewhere. He left a last will and testament which was duly admitted to probate in the State of Illinois, and which was also duly probated upon an authenticated copy thereof in the chancery court of Washington County, Mississippi. In his will the decedent appointed Andrew T. Greeley, Walter A. Graff, and W. Herbert Stewart as executors and trustees of the will. Under the terms of the will Andrew T. Greeley was designated as the active executor and trustee, and the other two executors and trustees were to serve in an advisory capacity. It was expressly stipulated, however, that upon the death of any of the trustees the survivors or survivor should execute the trust.

After the death of the testator the three trustees qualified and acted as such until the death of Walter A. Graff, who died on April 21, 1927. After the death of Graff, Andrew T. Greeley and W. Herbert Stewart continued to serve as trustees of the estate until the death of Greeley on September 17, 1947. After the death of

Greeley, the above named W. Herbert Stewart became the sole surviving trustee.

The testator in his will devised and bequeathed his property to the above named trustees, to be held in trust for the uses and purposes set forth in the will. And in his will the testator directed that the net income from the properties be divided equally among his brother and three sisters during their lifetime, and that the corpus of the estate after the deaths of the life beneficiaries be divided among certain religious and charitable organizations named in the will in the manner provided therein.

There was a considerable amount of litigation over the estate during the years that immediately followed the death of the testator, and in 1929 a decree was entered in the Superior Court of Cook County, Illinois, providing for an agreed settlement of the controversies which had existed between the heirs-at-law and the charitable organizations mentioned in the will. This agreement appears to have provided generally for a distribution of the income among the life beneficiaries with a division of the corpus of the estate to be made after the death of the life beneficiaries, among the heirs-at-law and the charitable organizations mentioned in the will, it being agreed that half of the corpus of the estate should go to the heirs-at-law, and the remaining half of the corpus of the estate to the so-called "charities". The terms of this decree were later incorporated into and approved by a decree of the chancery court of Washington County dated March 20, 1929. Prior to the date of that decree the lands owned by the testator and situated in Washington County, Mississippi, had been disposed of by the trustees; and under the terms of the decree of the chancery court of Washington County dated March 20, 1929, the trustees were authorized and directed to sell the lands in Sharkey County for not less than $265,000. In that decree it was expressly provided that all of the heirs-at-law of the said testator, who were parties to the suit and whose names appear in the decree, should execute

individually and as heirs-at-law of Frank B. Houston, deceased, and deliver to the trustees any and all deeds of conveyance, assignments and other instruments necessary or required from time to time to transfer, convey and release all of their right, title and interest in and to the Mississippi assets or the Illinois assets, real and personal, to enable the executors and trustees to convey and deliver good title to the Mississippi assets and the Illinois assets of every kind and character.

The complainant in his bill of complaint alleged that for many years he had aided and assisted the trustees in looking after the Sharkey County lands belonging to the estate, and that the trustees agreed that if the complainant would send them a purchaser for the lands who was ready, able and willing to buy they would allow him a 5% commission on the sale of the property; that the complainant acting on these verbal assurances of the trustees had spent a considerable amount of time and money in undertaking to find a purchaser for the property. But notwithstanding the efforts made by the complainant to find a purchaser no sale of the lands had been made at the time of the death of Andrew T. Greeley on September 17, 1947.

On May 24, 1946, Cora M. Houston and others, heirs-at-law of Frank B. Houston, deceased, filed a petition in the chancery court of Washington County, Mississippi, for an accounting by the trustees and in their petition asked that the court restrain and enjoin the trustees from selling any of the real estate situated in the State of Mississippi pending the filing of such account, without the approval of the court; and on May 31, 1946, the chancellor signed an order directing that a writ be issued by the clerk requiring Andrew T. Greeley and W. Herbert Stewart, as executors and trustees under the will of the deceased, to account in detail for their administration of the trust estate from the date of their appointment, and pending the filing of such account and the approval thereof by the court, to refrain from disposing of, by sale

or otherwise, any of the property, real or personal, of the said Frank B. Houston, deceased, located in the State of Mississippi, until after such proposed sale, or other proposed disposition thereof, had been submitted to and approved by the court. A copy of this writ was ordered to be served upon the executors and trustees and notice thereof to be given to the other parties. A lis pendens notice of the above mentioned suit was filed in the office of the chancery court clerk of Sharkey County, Mississippi, on June 1, 1946, and was entered upon the lis pendens record book.

No accounting had been made by the trustees, as required by the above mentioned order of the chancery court of Washington County, at the time of the death of Andrew T. Greeley on September 17, 1947. Stewart, however, testified that prior to the death of Greeley the trustees had employed Haskins & Sells, expert accountants of Chicago, Illinois, to prepare the twenty year account which the court had ordered the trustees to file, and that these accountants were working on the account at the time Mr. Greeley died in 1947. After Greeley's death Stewart retained the services of Haskins & Sells to bring the account down to date. But the account was not actually completed and filed until several months later.

On January 13, 1948, the complainant, W. L. Harrison, addressed a letter to W. Herbert Stewart, the trustee, informing him that the Wood-Mosaic Company, Inc., of Louisville, Ky., was interested in the purchase of the Sharkey County lands and had representatives in Mississippi to make a detailed inspection of the properties. On January 21st Stewart acknowledged receipt of Harrison's letter and asked for a more definite report on the matter and on the kind of offer which the Wood-Mosaic Company was willing to make. Stewart testified that prior to that time he had had no correspondence with Harrison about the sale of the property. On January 27th Harrison recived a letter from Angus D. Mac-

Lean, president of the Wood-Mosaic Company, Inc., advising him that the company had completed the checking of the land and "submitting for quick acceptance our offer of $275,000 cash for this tract and timber in fee with all mineral rights reserved". In his letter MacLean also stated that if the deal should be consummated the purchaser was to pay the 1948 taxes on the land, and that the purchaser was ready to deposit $5,000 in escrow "as a guarantee of good faith", and that the offer was dependent on the title being satisfactory to the company's legal department. The letter also stated that if the title was unsatisfactory and the estate could not perfect the title within 90 days from date the offer should be null and void. On February 2, 1948, Harrison wrote Stewart a letter in which he stated that he had had a conference on Saturday with Douglas Shands, who up until that time had been the attorney for the trustees in the management of the Mississippi properties. Harrison stated in his letter to Stewart that Shands said that it would be a week before he could prepare the sales contract to be submitted to Stewart and to the attorneys for the Wood-Mosaic Company. Harrison also stated in his letter that he thought it would take another week to "dicker around about the matter before we can get the contract up to you." On February 4th Stewart acknowledged receipt of Harrison's letter and stated that he would do everything he could do to facilitate the completion of the sale. On February 21st Harrison wrote Stewart another letter in which he stated that he expected to see Stewart in Memphis on February 26th at a conference which Harrison apparently had arranged for that date. Harrison also stated that he was writing Mr. MacLean of the Wood-Mosaic Company to be present at the conference with his attorney.

The conference referred to above was held in Memphis on February 26th. Stewart stated in his testimony that he had never seen Harrison prior to the Memphis conference, except one time and that was while he was at-

tending an insurance men's convention in Jackson, Mississippi, several years before the date of their meeting in Memphis. Stewart met Harrison in the lobby of the Peabody Hotel in Memphis on February 26th, and at that time Harrison told Stewart that he would expect a 5% commission as compensation for his services in the matter of the sale of the Sharkey County property. Stewart made no response to this statement by Harrison. Mr. Eugene P. Kealey, Stewart's Chicago attorney, accompanied him to Memphis on February 26th. Stewart expected Dugas Shands to meet them there, but Shands did not appear.

At this conference Stewart had submitted to him the formal offer to purchase the lands and timber made by Wood-Mosaic Company, which was dated February 11, 1948. After a few minor changes had been agreed upon, changing the bank which was to act as the depository of the escrow payment and providing for an extension of time for acceptance of the offer, Stewart executed a qualified acceptance of the offer to purchase. This qualified acceptance was dated March 3d, and was mailed to the Wood-Mosaic Company after Stewart's return to Chicago.

Stewart testified that he had personal knowledge of the injunction which had been granted by the chancellor in May 1946 restraining the trustees from selling the property without the approval of the chancery court. And on this point Mr. Eugene P. Kealey, Stewart's Chicago attorney, who testified as a witness for the defendant, stated that during the conference, which was held in Memphis on February 26th, he talked with Harrison about the matter and said to him "did you tell these people about the injunction down in Greenville". Harrison said, "No, I never mentioned it." Kealey said "Why not", and Harrison said, "Well, because Dugas always told me to get an offer in writing and we could have that injunction dissolved in five minutes, not to worry, to get the offer first, that was the important

thing." Kealey then told Harrison that they would have to have the injunction dissolved before the sale could be made.

After the conference in Memphis on February 26th, Stewart remained over in Memphis another day. He tried to contact Shands by telephone, but was unable to locate him. He then placed a telephone call for Mr. Ernest Kellner, an attorney of Greenville, and requested him to come to Memphis the next day. Kellner came to Memphis the next day, and Stewart employed him as his attorney. Stewart then returned to Chicago. A few days later Stewart signed a petition to the chancery court of Washington County asking that the proposed sale of the Sharkey County lands to Wood-Mosaic Company for the sum of $275,000 be approved by the court. Stewart came to Greenville on the 8th or 10th of March to attend the hearing upon that petition. He brought with him his Chicago attorney. When the matter was called for hearing upon the petition, attorneys for the heirs requested a continuance, and the court set the case down for hearing at the October term.

Stewart and his attorneys then went to Memphis and had a conference with J. E. McCadden and his associates, who were the attorneys representing the heirs. Stewart still hoped to obtain their consent to the sale of the property. Stewart saw Mr. J. W. Hottell, the attorney for Wood-Mosaic Company, that night at the hotel and obtained a 15 day extension of time from the Wood-Mosaic Company, hoping that the heirs could be persuaded to agree to the sale. The extension of time referred to was in the form of a written agreement signed by Stewart extending for 15 days the period of time in which the Wood-Mosaic Company might accept or reject the qualified acceptance of the trustee of the offer of the Wood-Mosaic Company to purchase the lands and timber which was dated February 11, 1948. The heirs, however, failed to signify their agreement to an acceptance of the offer of Wood-Mosaic Company to

purchase the lands and timber for $275,000, and on March 26th Stewart received a letter from Wood-Mosaic Company withdrawing its offer to purchase.

Sometime thereafter Stewart's auditors completed the audit which they had been employed to make, and the preparation of the account which the trustee was required to file under the order of the court entered in May 1946.

The Wood-Mosaic Company during the summer made a new offer to purchase the Sharkey County lands for the sum of $300,000. Stewart discussed the matter with the attorneys for the "charities" for the purpose of enlisting their support in his effort to have the court approve the sale for that amount. The "charities" employed Farish & Keady, attorneys of Greenville, Mississippi, as their attorneys, to represent them in the matter. Stewart's attorney filed a motion to dissolve the injunction, which the chancellor had issued in May 1946, and to have the court approve the sale of the Sharkey County lands to Wood-Mosaic Company for $300,000, pursuant to the terms and conditions of the new offer to purchase which had been submitted by Wood-Mosaic Company, and the attorneys for the "charities" joined in the application for the dissolution of the injunction.

The new offer of the Wood-Mosaic Company to purchase the property for $300,000 was dated July 26, 1948, and was subject to the following conditions to wit:

(1) That within 30 days from the date of said offer a decree should be entered dissolving the above mentioned injunction.

(2) That within said 30 day period a decree should be entered authorizing a sale of the property in accordance with the terms of the offer.

(3) That said decree should be conclusive and binding and the right of appeal should be effectively barred or waived within 10 days from the date of the decree. And

(4) That the effectiveness of the decree was to be determined solely and exclusively by the attorneys of the

Wood-Mosaic Company within 20 days after the date thereof.

The chancellor heard the application for a dissolution of the injunction and approval of the sale on July 27th. The heirs at law appeared and resisted the application for a dissolution of the injunction and approval of the sale, contending that the proposed sale price of $300,000 was inadequate. After a full hearing the chancellor entered a decree dissolving the injunction and approving the sale of the property for $300,000 to the Wood-Mosaic Company upon the terms and conditions set forth in its written offer. The trustee was unable to obtain from the heirs at law a waiver of their right of appeal from the decree; and the heirs at law took steps immediately to perfect an appeal by filing a $100 bond to cover the court costs and by giving notice to the official court reporter to transcribe and file the testimony taken on the hearing, which was done on August 9, 1948. The Wood-Mosaic Company thereupon, by letter dated August 13, 1948, withdrew and definitely terminated its offer to purchase the property, on the ground that the decree of July 27, 1948, was not conclusive and binding and the right of appeal therefrom was neither barred nor effectively waived within 10 days from the entry of the decree.

During the month of November, 1948, the defendant ''charities'' and the defendant heirs at law agreed to a sale of the property for $290,000, and the trustee offered the property to the Wood-Mosaic Company for $290,000. The Wood-Mosaic Company, however, declined to enter into any further negotations for the purchase of the property.

The contract upon which appellee sued in this case was an alleged oral contract; and in the many letters which Harrison wrote to Stewart during the several months the Wood-Mosaic. Company's offers were under consideration, no mention was made of the commission which Harrison was to receive in the event the property was sold. In answer to a question propounded to Harrison

by his own attorney, while he was testifying in his own behalf, Harrison stated that the agreement which he had with the trustee in regard to a commission to be paid to him if he secured a purchaser, was that he should be paid a commission of "five percent of whatever it was sold for". Stewart testified that he knew that Harrison expected to be paid a commission of 5% "provided he sold the property, and provided the contract price was paid, from which the commission could be paid". Stewart also stated in answer to a question propounded to him by Mr. McCadden, attorney for the heirs, on the hearing before the chancellor upon the petition for approval of a sale of the property to the Wood-Mosaic Company, that if the sale to the Wood-Mosaic Company should be approved by the court he would recommend the payment of a 5% brokerage commission to Mr. Harrison.

After the record was filed in this Court the appellant filed a motion asking that the Court dismiss the case for lack of jurisdiction, and in his brief in support of that motion the appellant contends that under the rule laid down in Clopton v. Gholson, 53 Miss. 466, and in Norton et al. v. Phelps et ux., 54 Miss. 467, and further elaborated and discussed in the more recent case of Shelby et al. v. White, 158 Miss. 880, 131 So. 343, the appellee wholly failed to allege or establish a right to subject the trust property to the payment of the claim against Stewart, trustee, and that the attachment of the trust property was wrongful.

We think that under the provisions of the will and the agreed decree of the chancery court of Washington County rendered in 1929, which provided that the lands in Mississippi should be sold by the trustee, the trustee had a right to employ a broker to aid him in making the sale. "A trustee who is empowered to sell property at public auction or by such other means as he may deem expedient may employ brokers". 65 C. J. 756. "Trustees have an inherent right to be reimbursed all

expenses properly incurred in the execution of the trust, and no express declaration in the trust is requisite to create that right.'' Hill on Trustees, 570, et seq.; 2 Perry on Trusts, par. 910; Norton et al. v. Phelps et ux., supra. In the case of Fearn v. Mayers, Trustee et al., 53 Miss. 458, the court said, ''It is sufficient to remark that, without any stipulation to that effect, the expenses of administering a trust are always chargeable upon the trust fund, and that every appointment of a trustee or agent to transact an extended and complicated business carries with it the power to employ sub-agents; so that the enumeration of these things in the conveyance in this instance was unnecessary.''

██ █ Where the debt sued on is one which the trustee is authorized by the instrument creating the trust to incur and the trustee is insolvent or a nonresident, the creditor may enforce his demand by a bill in chancery directly against the trust estate. Norton et al. v. Phelps et ux., supra; Stern Bros. v. Hampton et al., 73 Miss. 555, 19 So. 300.

The motion to dismiss the suit for lack of jurisdiction is therefore overruled, and we shall now consider and dispose of the case upon its merits.

The complainant in his bill alleged that he had in good faith procured a purchaser, who was willing, able and ready to purchase the property upon the terms offered by the trustee and at a price which the trustee was willing to accept; that the sale had not been consummated because of the negligence and indifference of the trustee; and that the complainant was therefore entitled to recover the five percent commission which he would have been entitled to receive if the sale had been consummated. The complainant alleged that the first offer made by the Wood-Mosaic Company, to purchase the property for $275,000, was for quick acceptance, and that the trustee ''ignored the same, and took a vacation—pleasure trip to California, where he remained for many weeks and made no effort to carry out the terms and conditions of

the offer'', and that for that reason the offer was formally withdrawn. The complainant alleged that the second effort to sell the property to the Wood-Mosaic Company, for the sum of $300,000, failed through ''the negligence and indifference of the trustee'' or ''for some other cause unknown to the complainant.''

These allegations were not sustained by the testimony taken on the trial of the case. We have made a careful study of the record. The facts relating to each of the two offers to purchase the property and the reasons why the trustee was unable to consummate a sale under either of the two offers are clearly set forth in the testimony of the witnesses and the record evidence offered by the respective parties. There is little conflict in the testimony as to these facts. And from the facts thus disclosed by the record it appears that the first offer failed because no immediate hearing was granted by the court (and an immediate hearing probably could not have been granted without formal notice to the heirs) on the application filed by the trustee at the March 1948 term of the court for approval by the court of the proposed sale for $275,000, and no approval of the proposed sale was obtained, as required by the injunction decree. The second offer failed because the heirs appealed from the order of the court entered on July 27, 1948, dissolving the injunction; and under the terms of the offer itself the offer to purchase was withdrawn by the Wood-Mosaic Company on August 13, 1948.

The complainant, according to the record, had not only constructive notice but also actual knwledge of the injunction which had been granted by the chancellor in May 1946 restraining the trustee from selling the property without the prior approval of the court. A lis pendens notice of the suit asking for an accounting by the trustee and of the restraining order prohibiting the trustee from selling the property without the approval of the court had been filed in the office of the chancery court clerk of Sharkey County, on June 1, 1946,

and had been entered upon the lis pendens record. And in a letter written by Harrison to A. T. Greeley, at that time acting trustee, and dated August 12, 1946, which was introduced in evidence by the appellant in this case, Harrison stated to Greeley ''I looked on the records while I was in Rolling Fork today and found that lawsuit stuck on the lis pendens docket''. Harrison's personal knowledge of the injunction was also proved by the testimony of Eugene P. Kealey, Stewart's Chicago attorney, which has been referred to above.

The general rule relating to the payment of the broker's commission in the event the contract is rescinded or the sale otherwise fails because of the defect in the principal's title is stated in 8 Am. Jur., at page 1098, as follows:

''The great weight of authority is to the effect that in the absence of a stipulation in the contract between the broker and his principal to the contrary, the former is entitled to his commissions if, acting in good faith, he procures a purchaser willing, able, and ready to take the property upon the terms offered by the principal, although the contract is rescinded or the sale otherwise fails because of a defect in the principal's title, of which the broker had no notice. The rule rests upon the theory that the broker, in the absence of notice to the contrary, is entitled to act upon the assumption that the principal has a marketable title. This presumption is not conclusive, however. It may be waived by the acts of the parties, and where the facts are inconsistent therewith, it will not be implied.

''If a broker, at the time he makes his contract with the owner, knows of defects in the employer's title, or knows of facts sufficient to put a prudent person on inquiry, which, if followed with reasonable diligence, would have resulted in such knowledge, he is not entitled to recover where the sale fails because of such facts, unless it was the intention of the parties that the

employer should subsequently perfect his title in order to be able to perform.''

In the case of Shireman et al. v. Wildberger et al., 125 Miss. 199, 87 So. 131, 132, which is cited by both the appellant and the appellee in their briefs, the Court said that ''Whenever a real estate agent undertakes to make a sale of a piece of property knowing that the title is defective, he undertakes, in effect, to sell what the owner has, provided the defect is such a one as cannot be overcome by reasonable effort on the part of the seller.'' And in that case the court said that it was the duty of the Shiremans to make some reasonable effort to get the cloud removed from their title, anl that they had neglected to make such effort which under the facts in that case would probably have resulted in the sale being consummated.

In the case that we now have before us, ██ █ the trustee did make a reasonable effort to obtain the approval of the court of the sale of the property to the Wood-Mosaic Company under the terms of the offers made, and to obtain a dissolution of the injunction which had been granted prior to the death of A. T. Greeley. And in each case the trustee encountered resistance from the heirs, who had procured the injunction. The court did not approve the proposed sale under the first offer, and the offer was withdrawn by the Wood-Mosaic Company on March 26, 1948. The court did approve the proposed sale under the second offer after a full hearing on July 27, 1948, but an appeal was taken by the heirs from the chancellor's decree approving the proposed sale, and the Wood-Mosaic Company, after being notified of that appeal, formally withdrew its offer to purchase as it had a right to do under the terms of the offer.

Each of the offers submitted by the Wood-Mosaic Company was conditioned upon the title being satisfactory to the company's legal department. To that extent the offers were conditional offers. Each of the offers were

withdrawn because the legal difficulties growing out of the injunction suit could not be overcome by the trustee within the time specified in the offer to purchase. The appellee had personal knowledge of the condition of the trustee's title and the restriction placed upon the trustee's power to sell by the injunction decree. The appellee must be deemed to have taken the chances incident to the situation. Ennis & Dale v. Cator et al., Tex. Civ. App., 174 S. W. 947; Corbin v. Mechanics' & Traders' Bank, 121 App. Div. 744, 106 N. Y. S. 573. A sale could not be consummated without the prior approval of the court, or an order dissolving the injunction. Neither the appellant nor the appellee could ignore the limitations thus imposed upon the trustee's power to sell.

The services rendered by the appellee in seeking a purchaser of the property at a price which the trustee was willing to accept were rendered by him with full knowledge that the trustee held title to the property as a testamentary trustee, and that his power to sell had been restricted by "that lawsuit stuck on the lis pendens docket" in the chancery clerk's office at Rolling Fork. It was not within the power of the appellant to perfect his title by removing the restriction on his power to sell imposed by the injunction decree and to cut off the right of the heirs to appeal, within the time allowed in either of the offers made by the Wood-Mosaic Company. The appellee was not entitled to recover on the facts presented in the record. And the decree of the lower court will be reversed, and a decree will be entered in this court dismissing the bill of complaint.

Reversed and judgment rendered for the appellant.